

# Missouri Court of Appeals

### Southern District

### Division One

STATE OF MISSOURI, )
          )
       Plaintiff-Respondent, )
          )
v.           )    No. SD33841
          )    Filed: 1-28-16
MARTIN J. SYKES,           )
          )
       Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Thomas E. Mountjoy, Circuit Judge

**<u>AFFIRMED</u>**

Following a jury trial, Martin Sykes (Defendant) was convicted of the crime of domestic assault in the second degree. *See* § 565.073.[1] Defendant appealed and presents one point for review. He contends the trial court erred in allowing testimony that Defendant tried to rape the victim, B.S. (Victim). Finding no merit in this contention, we affirm.

Defendant was charged by amended information as a persistent offender with second-degree domestic assault for events that occurred in April 2013. A jury trial was

---

[1] All statutory references are to RSMo Cum. Supp. (2012) unless otherwise specified. All rule references are to Missouri Court Rules (2015).

held in August 2014. After the jury found Defendant guilty as charged, the court sentenced Defendant to serve eight years in prison.

On appeal, we view the evidence and all reasonable inferences derived therefrom in the light most favorable to the verdict; all contrary evidence and inferences are disregarded. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). We defer to the fact-finder's "superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." *State v. Lopez–McCurdy*, 266 S.W.3d 874, 876 (Mo. App. 2008). Viewed from this perspective, the following evidence was adduced at trial.

On the morning of April 23, 2013, Defendant and Victim, who were in a relationship and living together, had been drinking and were not getting along. At some point that morning, Victim told Defendant that she wanted to break up with him. Defendant was not happy about Victim's attempt to end the relationship.

Around 11:00 a.m., a bystander saw Defendant and Victim in the middle of a road in Springfield. Victim was on the ground, and Defendant was trying to pull or drag her. The bystander also saw Defendant kick Victim several times in her lower back. The bystander then called police.

Two police officers arrived and located the couple in an apartment. As soon as Defendant opened the door to the apartment, Officer Timothy Gunn (Officer Gunn) heard Victim say "help." At that point, the other officer took Defendant outside while Officer Gunn spoke with Victim inside the apartment. Victim had injuries to the right side of her face, including a black eye and swelling. Victim told the officer that Defendant had tried

2

to rape her and that he had hit her and punched her in the right side of her head with a closed fist.

Victim was then taken to the hospital in an ambulance. The officers arrested Defendant and took him to the Greene County Jail. During an interview with police after Defendant received *Miranda* warnings, Defendant admitted to a police detective that he "probably" hit Victim.[2]

At trial, Victim testified that she barely remembered talking to a police officer on the day of the incident, and that she did not remember telling him much about the altercation between herself and Defendant:

> Q. [By the prosecutor] Do you remember talking with Officer Timothy Gunn on April 23, 2013?
>
> A. [By Victim] I can barely remember that.
>
> Q. Do you remember the officer knocking on the door?
>
> A. Yes.
>
> Q. Do you remember saying "Help, Officer" when he knocked on the door?
>
> A. I don't remember.
>
> Q. Do you remember telling the officer that your boyfriend, [Defendant], had tried to rape you?
>
> A. I don't remember that.
>
> Q. Do you remember telling the officer that you had gotten off of a city bus near Campbell and Meadowmere and that you all were crossing the street when he pushed and hit you?
>
> A. I don't remember saying that. I remember getting off the bus.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Q. Do you remember telling the officer that you went inside Apartment 3, and you all were arguing because the defendant thought that you were cheating on him?

A. Yes, I remember that.

Q. Do you remember that happening? Or do you remember telling the officer that?

A. Both. I remember telling him that.

Q. Do you remember telling the officer that the argument got worse, and the defendant got violent?

A. I don't remember that.
….

Q. [By the prosecutor] [Victim], do you remember telling the officer that the defendant punched you several times?

A. No.
….

Q. [By the prosecutor] Do you remember telling the officer that the punches came to the right side of your head?

A. No, ma'am. I don't remember.

Q. And do you remember telling the officer that your boyfriend used a closed fist with his right hand?

A. I don't remember.

Q. Do you remember telling the officer that it was very quickly after the defendant punched you that the officers arrived and knocked on the door?

A. I remember that.

Later in the trial, the prosecutor asked Officer Gunn whether he remembered what she had told him:

Q. [By the prosecutor] Now, in the conversation you had with [Victim], are you able to remember some of the specific things that she told you?

A. [Officer Gunn] Yeah.

4

Q. What specifically do you remember her telling you about what happened –

[Defense Counsel]: Objection as to hearsay, and objection under the confrontation clause, Your Honor.

[Prosecutor]: Perhaps we need to make a record now, Judge, about this.

THE COURT: All right.

The prosecutor argued that "Missouri law allows for prior inconsistent statements if I have laid the foundation. In particular, I did lay the foundation. I asked this victim if she recalled saying these particular things." The trial court agreed with the prosecutor in part, but warned that she would "have to ask questions that are tailored to those things that she specifically said that she did not remember, and not just in general."

Officer Gunn then testified about the specific statements made to him by Victim when she was questioned by the officer:

Q. [By the prosecutor] When you spoke with [Victim] on that day in that investigation, did she say "Help, Officer" to you?

A. [By Officer Gunn] I believe so. I don't recall her exact – the exact way she said it.

Q. And that was while she was still in the apartment?

A. Correct.

Q. Did she say to you that her boyfriend, [Defendant], had tried to rape her?

A. She did.

Q. Did she say to you that they were crossing the street when her boyfriend pushed and hit her?

A. She did.

5

Q. Did she say to you that, once they got to the apartment, that the argument got worse and he became violent?

A. Yes.

Q. Did she say to you that the defendant punched her several times in the right side of the head with a right closed fist?

A. Correct.

No objection was made when the question about the attempted rape was asked.

The officer then testified that he did not follow up on whether Defendant had tried to rape or did rape Victim. The detective involved in the case also testified, *inter alia*, as to reasons why the police department might not investigate a rape allegation.

The only other mention of attempted rape or rape during the testimony came from defense counsel when counsel asked the detective: (1) if it's true that people don't report a rape because the rape never happened, and the detective agreed that it was true; and (2) whether the detective believed there had been a rape in this case, to which he said he did not.

The prosecutor did not mention the alleged attempted rape or alleged rape during her opening or in the closing argument. Defense counsel mentioned the alleged attempted rape several times during his closing, including stating that it was a "nonissue" and that Victim was a liar.

Finally, the prosecutor referred to the alleged rape in her rebuttal closing to clarify that the alleged attempted rape was not an issue in the case and was only part of what was said during the investigation, explaining:

> Now, [Victim] also said: He tried to rape me. And you remember when [defense counsel] was questioning [the detective], do you – and he even asked him – personally believe that a rape occurred? Well, nobody is

6

saying that a rape occurred. At the time all [Victim] said was that "He tried to rape me."

Now, again, I don't have evidence about that. I don't know much about that. But that's just one of the facts of what was said at that time. She was clearly injured. There's clearly physical injury. By giving you the information that that was said, we are not trying to demonize anyone. We are just trying to give you all the information. That was said. But this is what we know: She was injured.

In Defendant's motion for new trial, he claimed the trial court abused its discretion in overruling his objection to hearsay testimony from Officer Gunn. The trial court denied the motion. This appeal followed.

The only issue in this appeal is whether the trial court erred by overruling the hearsay objection and allowing Officer Gunn to testify that Victim said Defendant tried to rape her. Defendant argues that "the statement was hearsay that was extraneous to the issues of the case" and as evidence of an uncharged crime "was so prejudicial that it deprived [Defendant] of a fair trial on the charge of domestic assault in the second degree."[3] We disagree.

To properly preserve a matter for appellate review, the objection at trial must be specific, and the point raised on appeal must be based on the same theory as that presented at trial. *State v. Goins*, 306 S.W.3d 639, 645-46 (Mo. App. 2010). It is incumbent on the objecting party to make the basis of his objection reasonably apparent to the trial court in order to provide the opponent an opportunity to correct the error and for the court to correctly rule on it. *Id*. at 646. Missouri courts strictly apply these principles because a

---

[3] Insofar as relevant here, § 565.073 provides that "[a] person commits the crime of domestic assault in the second degree if the act involves a family or household member … and he or she: (1) Attempts to cause or knowingly causes physical injury to such family or household member by any means .…" § 565.073.1(1).

7

trial judge should be given an opportunity to reconsider his or her prior ruling against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered. *Id*. Consequently, the alleged error is not preserved where the basis for the specific objection is not readily apparent. *Id*. Further, a party is not permitted to broaden the objection presented to the trial court, and cannot rely on a theory on appeal different from the one offered at trial. *State v. Edberg*, 185 S.W.3d 290, 293 (Mo. App. 2006).

During trial in this case, defense counsel objected generally to Officer Gunn's testimony as hearsay.[4] Similarly, in Defendant's motion for new trial, he argued only that the trial court erred in admitting hearsay testimony by the police officer. At no point did counsel specifically object to any testimony about an alleged attempted rape on the ground that such testimony was extraneous and unduly prejudicial evidence of an uncharged crime. Because Defendant's claim of error on appeal was not readily apparent to the trial court and different from that at trial, his claim is not preserved. *See Goins*, 306 S.W.3d at 646; *Edberg*, 185 S.W.3d at 293. Our review is limited to plain error pursuant to Rule 30.20. *Edberg*, 185 S.W.3d at 293.

Rule 30.20 provides, in pertinent part, that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted." *Id*. "A claim of plain error places a much greater burden on a defendant than an assertion of prejudicial error." *State v. Wright*, 216 S.W.3d

---

[4] The trial court properly overruled the hearsay objection because Officer Gunn's testimony was directed to prior inconsistent statements made by Victim. These statements were admissible under an exception to the hearsay rule and could be received as substantive evidence to prove the domestic assault charge. *State v. Cravens*, 132 S.W.3d 919, 926-27 (Mo. App. 2004); § 491.074 RSMo (2000).

196, 199 (Mo. App. 2007). Plain error and prejudicial error are not synonymous terms, and mere allegations of error and prejudice will not suffice. *Id*. "Plain error can serve as the basis for granting relief on direct appeal only if the error was outcome determinative." *State v. Placke*, 290 S.W.3d 145, 153 (Mo. App. 2009); *see also State v. Doubenmier*, 444 S.W.3d 921, 930 (Mo. App. 2014). "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence." *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000) (internal quotation marks and citation omitted).

There is no basis in the record before us to find that Officer Gunn's testimony about the attempted rape had an outcome-determinative effect on the jury. The investigating detective said that he did not investigate an alleged rape and did not believe that one occurred. The prosecutor did not comment on the alleged attempted rape in her opening or closing argument until after it was raised by Defendant during his closing argument. During the prosecutor's rebuttal argument, she refuted any notion that the State believed a rape had occurred. There were no comments or inferences to lead the jury to believe that, because Victim told the police officer that Defendant tried to rape her, he was guilty of domestic assault. Evidence of the assault included testimony from the bystander who witnessed the altercation, Victim, and Defendant's own statement that he "probably" hit Victim. When considered with and balanced against all of the evidence properly admitted, there is no reasonable probability that the jury would have reached a different conclusion but for Officer Gunn's testimony about the attempted rape. Because Defendant

9

failed to make the necessary showing of outcome-determinative prejudice, the trial court did not plainly err in allowing the testimony of the police officer. Defendant's point is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCUR

MARY W. SHEFFIELD, C.J. – CONCUR