

## Missouri Court of Appeals
### Southern District
### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD35588 |
| | ) | |
| JON DENVER THOMAS, | ) | FILED: December 17, 2019 |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY
Honorable Jack A.L. Goodman

**<u>AFFIRMED IN PART; REVERSED AND REMANDED IN PART</u>**

Following a jury trial, Jon D. Thomas ("Defendant") was found guilty of six counts of first-degree statutory sodomy (Counts 1, 2, 11, and 12–14), one count of attempted first-degree statutory sodomy (Count 4), three counts of second-degree statutory sodomy (Counts 3, 5, and 15), one count of first-degree child molestation (Count 7), one count of sexual misconduct involving a child (Count 8), and one count of victim tampering (Count 9). *See* sections 566.062, 566.064, 566.067, 566.083, and 575.270, respectively.[1] Following the jury's recommendations, the trial court sentenced Defendant to imprisonment terms of life for each conviction under Counts 1, 2, 4, 7, and 11–14; seven years for each conviction under Counts 3, 5, 9, and 15; and

---

[1] References to sections 566.062 and 566.067 are to RSMo Cum.Supp. (2006), references to section 566.064 are to RSMo (2000), references to section 566.083 are to RSMo Cum.Supp. (2008), and references to 575.270 are to RSMo Cum.Supp. (2005).

1

four years for the conviction under Count 8, with all sentences to run consecutively.

Defendant appeals, raising four points relied on. Defendant's first and second points challenge the exclusion and admission, respectively, of certain evidence pertaining to A.H., the victim of the crimes charged in Counts 1–3 and 11–15. Defendant's third and fourth points challenge his sentence for a class A felony under Count 7. Finding merit in Defendant's third and fourth points only, we vacate his sentence on Count 7, remand for resentencing on that count, and affirm the judgment in all other respects.

## Discussion[2]

### *Point 1 – No Error in Exclusion of Defendant's Exhibit 6*

In his first point, Defendant contends that "[t]he trial court abused its discretion overruling [Defendant]'s offer of proof and excluding Defendant's Exhibit 6, the forensic interview DVD of A.H."

The following facts are relevant to this point. A.H. is one of Defendant's victims. When allegations of sexual abuse against Defendant involving other victims were first reported, A.H. initially denied that Defendant had committed acts of abuse against her. One such denial occurred in 2013 during a recorded Child Advocacy Center interview ("the CAC interview"). [Tr. 408, 445]. Following the CAC interview, A.H. received counseling and, for two years, denied that Defendant had touched her in any way. In 2015, when she was 18 years old and seeing her third counselor, A.H. disclosed sexual abuse to the counselor after a year of building up enough trust to tell her about it.

During her trial testimony, A.H. testified to the multiple acts of sexual abuse committed against her by Defendant. She also testified that she initially denied that sexual abuse had taken

---

[2] The relevant facts are recited throughout the discussion section of this opinion. We view the facts in the light most favorable to the findings of guilt. **State v. Lammers**, 479 S.W.3d 624, 632 (Mo. banc 2016).

place, specifically testifying that she "denied everything" when questioned by the authorities and during the CAC interview.

Later in the trial proceedings, Defendant attempted to admit Defendant's Exhibit 6, a DVD recording of the CAC interview, into evidence. Defendant argued that the recording "is not only a prior inconsistent statement it is clearly impeachment." The State objected, arguing that A.H. had fully admitted during her testimony to initially having "denied everything" and, therefore, the exhibit was not inconsistent with her testimony.

The trial court ultimately sustained the State's objection and excluded the CAC interview from evidence, expressly finding only that "there was no inconsistency with her testimony." Defendant asserts that he "included this allegation of error in his motion for new trial," and the State does not challenge that assertion.

On appeal, Defendant does not deny that the CAC interview is hearsay but asserts, as he did in the trial court, that it was admissible as a prior inconsistent statement. He also asserts, however, that it was admissible as a past recollection recorded. The State claims that only the first of these assertions is preserved for appellate review. We agree.

> Generally,
>
> [t]o properly preserve a matter for appellate review, the objection at trial must be specific, and the point raised on appeal must be based on the same theory as that presented at trial. It is incumbent on the objecting party to make the basis of his objection reasonably apparent to the trial court in order to provide the opponent an opportunity to correct the error and for the court to correctly rule on it. Missouri courts strictly apply these principles because a trial judge should be given an opportunity to reconsider his or her prior ruling against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered. Consequently, the alleged error is not preserved where the basis for the specific objection is not readily apparent. Further, a party is not permitted to broaden the objection presented to the trial court, and cannot rely on a theory on appeal different from the one offered at trial.

*State v. Sykes*, 480 S.W.3d 461, 465 (Mo.App. 2016) (internal citations omitted). In the context

3

of preserving for appellate review alleged error in the trial court's exclusion of proffered evidence, a defendant's theory of admissibility "must be presented to or decided by the trial court." *State v. Blurton*, 484 S.W.3d 758, 778 (Mo. banc 2016).

Neither of Defendant's arguments addressing preservation of his past-recollection-recorded theory of admissibility, asserted in his reply brief, demonstrate that he either presented that theory to the trial court or that the trial court decided or ruled upon it. Defendant first argues that "[a]lthough trial counsel did not specifically say [the CAC interview] was a prior recollection recorded, the theory on appeal is the same offered at trial: A.H.'s 2013 forensic interview was admissible for its truth as substantive evidence under any exception to the general prohibition against hearsay." This argument is refuted by the record. Defendant did not claim below that the CAC interview was admissible "under any exception" to the hearsay rule. He repeatedly argued, rather, that it was specifically admissible as a prior inconsistent statement.

Defendant's second argument relies on his claim below that the CAC interview was admissible because "it is clearly impeachment." Citing *State v. Payne*, 126 S.W.3d 431, 442 (Mo.App. 2004), Defendant argues that "the notion of impeachment is inherent in the prior recollection recorded exception to hearsay and trial counsel's argument that A.H.'s interview was 'clearly impeachment' evidence contemplated this hearsay exception." Nothing in *Payne*, however, supports this broad proposition. Contrary to Defendant's argument otherwise, impeachment evidence can take the form of *any* of the hearsay exceptions or none of them at all. Because there is nothing about the prior recollection recorded exception, in particular, that uniquely inheres it to serve as a vehicle for the admission of hearsay impeachment evidence, Defendant's mention of impeachment in general did not present this specific theory of admissibility to the trial court.

Accordingly, because Defendant did not present the prior recollection recorded theory of admissibility to the trial court and has failed to demonstrate that the trial court otherwise decided or ruled on that theory, it was not properly preserved for appellate review. *See **Blurton***, 484 S.W.3d at 778. Defendant alternatively requests, in his reply brief, that we exercise our discretion to review for plain error under Rule 30.20.[3] We decline Defendant's invitation.

Outside of simply reciting the plain-error standard of review, Defendant provides no support for his plain-error review request with any allegations or argument applying that standard of review to the underlying facts. As this Court has previously stated:

> A plain-error analysis requires an examination of the facts and circumstances of the case that arguably give rise to a manifest injustice or miscarriage of justice determination. If we were to engage in a manifest-injustice or miscarriage-of-justice analysis, in the absence of Defendant providing us such an argument in his brief, we would have to scour the record and devise arguments on his behalf, thereby becoming his advocate. This is not an appropriate function for an appellate court and is something we cannot and will not do.

***State v. Massa***, 410 S.W.3d 645, 657 (Mo.App. 2013) (internal citations omitted).

We, therefore, are limited in our review to Defendant's preserved claim that the trial court abused its discretion in rejecting Defendant's claim that the CAC interview was admissible as a prior inconsistent statement.

> Generally, a trial court's decision to exclude testimony is reviewed for an abuse of discretion, granting substantial deference to the trial court's decision. When reviewing allegations of improperly excluded testimony the focus is not on whether the evidence was admissible but on whether the trial court abused its discretion in excluding the evidence. This discretion is abused only when the ruling is clearly against the logic of the circumstances, or when it is arbitrary and unreasonable. Even if the exclusion of testimony is erroneous, we will not reverse the judgment absent a finding that the error materially affected the merits of the action.

---

[3] Rule 30.20 provides, in pertinent part, "Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

*State v. Mort*, 321 S.W.3d 471, 483 (Mo.App. 2010) (internal quotation marks and citations omitted). "While not the ultimate focus of our review, determining that the proffered evidence is admissible is a necessary prerequisite to any finding of an abuse of discretion in its exclusion." *State v. Huckleberry*, 544 S.W.3d 259, 260 (Mo.App. 2017).

Here, Defendant attempted to impeach A.H.'s testimony with the CAC interview, alleging that it was a prior inconsistent statement and, therefore, admissible hearsay. "To lay a proper foundation to impeach a witness with regard to a prior inconsistent statement, the witness must be provided an opportunity to refresh his or her recollection of the prior statement and then allowed to admit, deny, or explain it." *State v. Wilson*, 105 S.W.3d 576, 585 (Mo.App. 2003). As relevant here, however, "[i]f the witness unequivocally admits to the prior statements, further proof is unnecessary and the evidence is inadmissible because the witness, by [her] own admission, has impeached [her]self." *Id.*

Defendant does not dispute or even address the fact that A.H. testified that she initially denied Defendant's abuse or that the trial court found that A.H.'s testimony and the CAC interview were *not* inconsistent. Accordingly, Defendant's claim that the CAC interview was admissible as a prior inconsistent statement is without merit. *See id.* Point denied.

### Point 2 – Challenged Testimony Invited by Defendant

In his second point, Defendant contends that "[t]he trial court plainly erred in failing to *sua sponte* strike counselor Kristen Bolton's repeated opinion testimony that A.H. was telling the truth and that she believed A.H., or thereafter declare a mistrial, or otherwise take any corrective action…."

The following facts are relevant to this point. Bolton is a licensed professional counselor who provided counseling to A.H. once a week over the course of more than two years. Defendant called Bolton as a witness during his case in chief and questioned her extensively

6

regarding her counseling sessions with A.H., who was then in the State's custody. Highlighted in the course of Defendant's questioning was that A.H., who initially maintained that Defendant had not sexually abused her, wanted to get out of the State's protective custody. This line of questioning gave rise to the following exchange:

[By defense counsel:] And then on November 13th, 2015, was there a revelation that day?

A. Are you asking about the day that [A.H.] admitted that [Defendant] had inappropriately touched her?

Q. Yes.

A. Yes.

Q. So two years into the counseling or two years from the time [A.H.] had been – little more than two years from the time she had been removed from her mom, been deprived Christmas, she has a revelation.

A. Yes.

Q. Okay.

A. With children who have gone through sexual abuse denial is a part of the struggle and she had been fighting her depression and her post-traumatic stress disorder and symptoms of that, *and she had found peace and was able to finally tell the truth*.

Q. Or what you perceived was the truth at the time?

A. I believed – *I believe [A.H.] is true*.

Q. Up to that time you did not believe what she said as not being assaulted?

A. *I believed [A.H.'s] truth in the beginning and I believed when the truth came out*. It is not my job to believe or judge my clients. It is my job to support, guide and care for them emotionally.

(Emphasis added.)

Thereafter, the State cross-examined Bolton regarding the issues raised previously on direct. Two pertinent exchanges were as follows:

7

[By the prosecutor:] And you indicated that the post-traumatic stress disorder was caused by [A.H.'s] sexual abuse by [Defendant]?

A. *In my professional opinion, yes*.

***

Q. And you indicated in your professional opinion that [A.H.] suffered emotional, mental and physically from the sexual abuse of [Defendant]?

A. *Yes*.

(Emphasis added.)

On redirect, Defendant again tried to elicit an admission from Bolton that A.H. lied in order to get herself out of the State's custody, which gave rise to the following exchange:

[By defense counsel:] [A.H.'s] feelings of frustration and anger increased more in her inability to handle things is when she made her first disclosure in November 2015; is that correct?

A. Yes.

Q. Could it be and would it be common that at that point in time she realizes in order to get the State on her side she has to lie and that lie increases her anxiety?

A. *If you are asking me if [A.H.] lied about the abuse, the answer is no she did not. [A.H.] did not attempt to manipulate the system by lying.*

(Emphasis added.)

Defendant now challenges the admission of all of the italicized portions of Bolton's testimony, *supra*. In support, he argues that the testimony "impermissibly invaded the province of the jury by vouching for A.H.'s credibility, resulting in evident, obvious, and clear error[.]" He further argues that the trial court's failure to *sua sponte* intervene resulted in a miscarriage of justice because his "defense strategy hinged on attacking A.H.'s credibility[.]"

Defendant's challenge fails, however, for the reason that, even if we assume without deciding that Bolton's testimony was error, even plain error, it was error that was invited by Defendant. Here, Bolton was *Defendant's* witness who was called as part of a trial strategy to

8

attack A.H.'s credibility. The scope and manner of Defendant's questions to Bolton suggest that he was seeking some sort of concession from her that A.H. could have lied as a means to remove herself from the State's custody, which, had she so testified, would have been a statement about A.H.'s credibility. This strategy is laid bare when, during redirect examination, Defendant asks Bolton, "Could it be and would it be common that at that point in time she realizes in order to get the State on her side *she has to lie and that lie increases her anxiety*?" (Emphasis added.)

By seeking to elicit testimony concerning A.H.'s credibility, Defendant invited Bolton's testimony and opened the door to the State's cross-examination on the subject. Such self-invited testimony, even if not otherwise admissible, may not now be used by Defendant to seek a plain error reversal of his conviction. *See **State v. Ellis***, 512 S.W.3d 816, 837 (Mo.App. 2016) ("Ellis did nothing to preserve a claim of error, or to attempt to remediate the error. More to the point, Ellis would have been hard pressed to complain about [the expert]'s testimony as it appears to have been invited by the line of questioning employed during cross-examination."). "'Although plain error review is discretionary, this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors.'" ***State v. Clay***, 533 S.W.3d 710, 714 (Mo. banc 2017) (quoting ***State v. Bolden***, 371 S.W.3d 802, 805 (Mo. banc 2012)). Point denied.

### *Points Three and Four – Plain Error to Sentence Defendant for a Class A Felony under Count 7*

In his third and fourth points, Defendant challenges his sentence of life imprisonment for first-degree child molestation under Count 7. He argues that there was insufficient evidence to support this sentence and that the submission of a jury instruction authorizing it was plainly erroneous. The State concedes these points.

The applicable version of section 566.067 in effect during the charge period, July11, 2013 through October 31, 2013, stated that a person commits the *class B felony* of first-degree child molestation if "he or she subjects another person who is less than fourteen years of age to sexual contact." First-degree child molestation is enhanced to a *class A felony*, however, in the following enumerated circumstances:

> (1) The actor has previously been convicted of an offense under this chapter or in the course thereof the actor inflicts serious physical injury, displays a deadly weapon or deadly instrument in a threatening manner, or the offense is committed as part of a ritual or ceremony…; or
>
> (2) The victim is a child less than twelve years of age and:
>
> (a) The actor has previously been convicted of an offense under this chapter; or
>
> (b) In the course thereof the actor inflicts serious physical injury, displays a deadly weapon or deadly instrument in a threatening manner, or if the offense is committed as part of a ritual or ceremony[.]

Section 566.067.2.

In this case, Count 7 of the State's fourth amended information charged that Defendant, "in violation of Section 566.067, RSMo, committed the *class A felony* of child molestation in the first degree…." (Emphasis added.) However, the factual allegations set forth in Count 7 were only "that on or between July 11, 2013 and October 31, 2013 … [D]efendant knowingly subjected L.A. … who was less than twelve years old to sexual contact by touching her vagina with his hand over clothing."

Jury instruction 16, the verdict director corresponding to Count 7, *did not* indicate a felony classification and only instructed the jury to find Defendant guilty of first-degree child molestation if it believed "that between July11, 2013 and October 31, 2013 … [D]efendant touched the genitals of [L.A.] through the clothing, and … that [D]efendant did so for the purpose of [D]efendant's sexual desire, and … that [L.A.] was a child less than twelve years of age."

10

Thus, neither the information nor the jury instruction alleged the existence of or allowed the jury to find that any one of the factual scenarios enumerated in section 566.067.2 occurred. Moreover, there was no evidence presented at trial that Defendant had a prior conviction under chapter 566, that L.A. suffered serious physical injury, that Defendant displayed any kind of weapon, or that the crime was part of a ritual or ceremony.[4]

The State's allegations, the trial evidence, and the verdict director submitted to the jury only support a conviction for the *class B felony* of first-degree child molestation, which has a maximum punishment of fifteen years' incarceration, *see* section 558.011.1(2), RSMo Cum. Supp. 2003. Defendant's sentence of life imprisonment on this count, therefore, exceeds the maximum allowable punishment for the offense. "Being sentenced to a punishment greater than the maximum sentence for an offense constitutes plain error resulting in manifest injustice." **State v. Severe**, 307 S.W.3d 640, 642 (Mo. banc 2010). The appropriate remedy, as acknowledged by all parties, is remanding the case so that Defendant can be resentenced accordingly. *See* **State v. Taborn**, 412 S.W.3d 466, 474 (Mo.App. 2013); **State v. Anderson**, 294 S.W.3d 96, 99 (Mo.App. 2009). Points three and four are granted.

## Decision

The sentence imposed on Count 7 is vacated and the case is remanded for resentencing on Count 7 consistent with this opinion.[5] The judgment in all other respects is affirmed.

GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS

---

[4] Although it was alleged and the jury could find that L.A. was a child less than twelve years of age, this alone is not sufficient for enhancement to a class A felony under section 566.067.2.

[5] On remand, the trial court should also correct the felony classification of the first-degree child molestation conviction in its judgment.