

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,                       )
                                         )
          **Respondent,**          )   **WD83104**
                                         )
**v.**                                   )   **OPINION FILED:  October 27, 2020**
                                         )
**TYLER J. GATES,**                      )
                                         )
          **Appellant.**           )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Jack R. Grate, Judge

Before Division Four:  Cynthia L. Martin, Chief Judge, Presiding, Alok Ahuja, Judge and
Edward R. Ardini, Jr., Judge

Tyler J. Gates ("Gates") appeals his convictions of felony murder in the second degree predicated on the forcible felony of robbery and armed criminal action following a jury trial.  Gates argues that the trial court infringed on Gates's constitutional right to testify in his own defense by excluding portions of his testimony explaining that he shot his victim in self-defense, and that had the excluded evidence been admitted, he would have been acquitted.  Gates also argues that the trial court committed plain error by failing to instruct

the jury *sua sponte* on self-defense and by failing to strike a venireperson *sua sponte*. Finding no error, we affirm.

## Factual and Procedural History

Gates does not challenge the sufficiency of the evidence to support his convictions of felony murder in the second degree and armed criminal action. Viewed in the light most favorable to the verdict,[1] the evidence established that, in late December 2017 or early January 2018, Gates and Luis Ramirez ("Ramirez") had a FaceTime conversation with Matthew Haylock ("the Victim"). During the conversation, the Victim showed Gates and Ramirez his Glock 17 handgun. After the conversation, Gates and Ramirez discussed the Victim's gun. Gates asked Ramirez whether the Victim would be easy to rob. Gates and Ramirez then discussed a plan to rob the Victim because Gates wanted a gun of his own. Ramirez already had a gun, a Glock 26 handgun.

On January 2, 2018, Gates and Ramirez left Ramirez's house in a two-door Chevrolet Cavalier owned by Gates's relative. Ramirez gave Gates his Glock 26, which was loaded. Gates put the Glock 26 in the driver's side door panel. The pair drove to a restaurant and discussed the plan to rob the Victim. Ramirez told Gates that he "wasn't necessarily feeling it." Gates said that if Ramirez was not going to help, then Gates was not going to go through with the plan.

Gates and Ramirez then drove to pick up the Victim so the three could go to the Independence Center shopping mall. Gates drove while Ramirez sat in the front passenger

---

[1]We view the evidence in the light most favorable to the jury's verdict, disregarding all contrary evidence and inferences. *State v. Campbell*, 600 S.W.3d 780, 784 n.1 (Mo. App. W.D. 2020).

2

seat.  The Victim sat in the rear passenger seat.  While Gates was driving, he asked the Victim if he could see his Glock 17.  The Victim gave Gates the Glock 17, and Gates put the gun on his lap.

Gates pulled into the parking lot of the mall.  Ramirez opened the front passenger door, stepped out of the car, and put the front passenger seat up to allow the Victim to exit the back seat.  While the Victim was getting out of the backseat, he asked Gates for his gun.  Gates said, "This is me," and "This is my gun now."  The Victim lurched toward Gates, and Gates shot the Victim with the Glock 26, Ramirez's gun.

Gates told Ramirez to remove the Victim from the car.  Ramirez refused.  Gates leaned over the front passenger seat and pushed the Victim.  The Victim landed on his face, sustaining injuries consistent with the pattern of the door frame.  Gates told Ramirez to get back in the car, but Ramirez refused.  Gates accused Ramirez of picking sides and drove away from the scene.  Ramirez called 911.  Ramirez identified Gates as the person who robbed and shot the Victim.  The Victim died as a result of the gunshot wound to his left lower chest.

After fleeing the scene of the shooting, Gates abandoned the Chevy Cavalier in the middle of a street a few miles from the mall.  Gates contacted his mother, who picked him up.  Gates told his mother and her boyfriend that he "messed [his] life up because of this."  Gates's mother and her boyfriend repeatedly advised Gates to turn himself in to the police.  Gates asked his mother for a ride to a nearby park.  Gates spent the night at a friend's house and turned himself in to the police the next day.

At 10:34 p.m. on the day of the shooting, police responded to a call about an abandoned car a few miles away from the Independence Center. Police officers found the Chevrolet Cavalier in the middle of the street with its lights on and engine running. Officers looked inside the vehicle and observed what appeared to be blood and a bullet hole in the rear passenger seat. A shell casing was recovered from the rear passenger floorboard, and a projectile was found in the rear wheel well. Two nine-millimeter pistols, (a Glock 26 and a Glock 17) were found in the front passenger seat underneath a black backpack. A firearms examiner determined that the shell casing found in the Chevrolet Cavalier matched the Glock 26.

On February 2, 2018, the State charged Gates with one count of conventional murder in the second degree in violation of section 565.021.1(1)[2] and one count of armed criminal action in violation of section 571.015. The State later amended the murder charge to felony murder in the second degree in violation of section 565.021.1(2) based on the fact the Victim's death occurred as a result of the attempted perpetration of a felony, specifically, robbery in the first degree.[3] Robbery in the first degree is a forcible felony.[4]

---

[2]All statutory references are to RSMo 2016 as supplemented through January 2, 2018, the date the offenses were committed, unless otherwise indicated.

[3]Though Gates was initially charged with felony murder predicated on attempted robbery, this charge was ultimately submitted to the jury as felony murder predicated on robbery. Modification of the felony underlying the felony murder charge is not material to the issues on appeal.

[4]Relevant to this case, robbery in the first degree requires proof of the forcible stealing of property and in the course thereof, causing serious physical injury to another, or being armed with a deadly weapon, or using or threatening the use of a dangerous instrument, or displaying or threatening the use of what appears to be a deadly weapon or dangerous instrument. Section 570.023.1. "Forcible felony" is defined as "any felony involving the use or threat of physical force or violence against any individual, including but not limited to murder, robbery, burglary, arson, kidnapping, assault, and any forcible sexual offense." Section 563.011(3).

The State filed a motion *in limine* to preclude Gates from injecting any issue of self-defense at trial. The State noted that section 563.031.1(3) precludes justification as a defense for the use of physical force upon a person when the actor was attempting to commit, committing, or escaping after the commission of a forcible felony. In response, Gates's counsel argued that Ramirez would likely testify that Gates was attempting to rob the Victim, while Gates told police after his arrest that he had not attempted to rob the Victim and instead shot the Victim in self-defense. Gates's counsel argued that by relying on section 563.031.1(3) to exclude evidence of Gates's explanation for the Victim's death, the trial court would be predetermining that Gates was attempting to rob the Victim, an issue in dispute. The trial court sustained the State's motion. The trial court reasoned that adoption of Gates's position would render section 563.031.1(3) meaningless.

At trial, Gates's counsel asked the trial court to revisit its ruling during voir dire. Counsel argued that Gates's constitutional right to a fair trial would be violated "by not allowing . . . Gates to put on a defense or self-defense rebutting state offenses [sic] a felony was occurring." Counsel noted that whether a "robbery was being committed" was a fact issue in the case, and that as a result, evidence that Gates had acted in self-defense was admissible. The trial court declined to change its *in limine* ruling.

Immediately prior to opening statements, Gates's counsel asked the court "to reconsider the ruling on the State's Motion in Limine arguing that we not be allowed to use self-defense in this case." Gates's counsel argued "we should be able to inject the defense of self-defense," and argued that although *State v. Oates*, 540 S.W.3d 858 (Mo. banc 2018), held a self-defense instruction cannot be given for felony murder, the "case does not state

5

that the defense is not allowed to assert self-defense in this matter." Gates's counsel argued that self-defense was "a fact issue for the jury." The trial court refused to change its *in limine* ruling, and advised that "testimony about self-defense is barred." Gates's counsel then advised the trial court that Gates would likely "be testifying to what happened in the vehicle at the time of the incident . . . including that he was in fear for his life." The State responded that testimony that Gates shot the Victim because he feared for his life was impermissible self-defense evidence. Gates's counsel responded that Gates had "a right to testify about what happened to him, about his version of events." The trial court responded that Gates could not "mention anything that touches on self-defense." Gates's counsel sought clarification that Gates would not be "allowed to testify to his version of events which happened in the vehicle." The trial court responded, "That's not what I said. He cannot do anything that touches on self-defense. Like I'm in fear. I had to do something to protect myself, that kind of stuff. . . . Anything commonsensically that has something to do with self-defense he can't do. It's barred. That's what I think [*Oates*] says."

During opening statement, Gates's counsel told the jury that Gates did not know the Victim well; that Ramirez and the Victim had been friends for four years; that Ramirez had talked about robbing the Victim of his Glock 17, but that on the day the Victim was picked up by Gates and Ramirez, the two had met at a restaurant, and any plans to rob the Victim were called off; that the Victim had his Glock 17 with him when picked up; that Gates had $300 on him; and that when he pulled in the parking lot at the mall, Ramirez got out of the car, and Gates "turn[ed] around and he's looking at a gun." The State asked to approach the bench but did not object. Instead the State said that "defense counsel is getting

6

dangerously close to violating your ruling." The trial court agreed. Gates's counsel responded, "I didn't say he was fearful of his life. I'm just going to give his version of his story. I understand . . . your ruling, but I can tell [Gates's] version of his story." Gates's counsel asked the trial court, "[A]re you ruling I cannot tell [Gates's] version of the events that happened within the vehicle?" The trial court replied "You can't talk about self-defense." Later during the discussion, Gates's counsel asked:

> Just so I'm clear, Judge. So the fact that we can't go into the facts, not that [Gates] will testify that [the Victim] pulled out a gun first, and [Gates] then grabbed the gun and then [Gates] shot.

The trial court responded that "[n]one of that will come in. . . . The only purpose of any of that is to demonstrate self-defense." Gates's counsel argued in response that by not being allowed "to talk about his version of the events," Gates was being deprived of a fair trial.

Following the close of the State's evidence, Gates's counsel advised that Gates would be testifying. In advance of putting Gates on the stand, Gates's counsel sought reconsideration of the trial court's ruling "barring us from using self-defense in this case." Gates's counsel no longer conceded that *Oates* precluded self-defense in his case, as had been the case in addressing *Oates* during opening statement. Instead, Gates's counsel argued that *Oates* did not preclude self-defense as a defense to felony murder and that Gates "should get to argue self-defense to rebut that [the] use of force was not justifiable given the fact that we are, again, disputing that any underlying felony occurred." Counsel acknowledged that section 563.031.1(3) precluded Gates from "using self-defense as a justification" if he was committing or attempting to commit a forcible felony, but urged that *Oates* effectively held to the contrary and permitted Gates "to use self-defense . . . even

7

though the statute says that we're not allowed to argue that." Gates argued that the disagreement between *Oates* and section 563.031.1(3) should inure to Gates's benefit, and that Gates should be allowed to use self-defense in his case. In an effort to distinguish *Oates*, Gates also emphasized factual differences between his case and *Oates*, including that the underlying felony at issue in *Oates* was not a forcible felony as in Gates's case, and that the defendant in *Oates* had not disputed commission of the underlying felony as Gates did.

The trial court refused to change its *in limine* ruling. Gates's counsel made an offer of proof through Gates's testimony. The trial court rejected the offer of proof and ruled that "[i]f the defendant testifies, he may not mention self-defense or anything touching upon self-defense or his fear regarding his need to protect himself or something." As a result, Gates testified about his version of the events on the day of the shooting, but was not permitted to testify: that he was nervous about the Victim's conduct in the car; that the Victim was attempting to rob him; or that a subsequent struggle over the Victim's gun resulted in Gates shooting the Victim with Ramirez's gun.

The jury found Gates guilty of felony murder in the second degree based on the forcible felony of robbery in the first degree, and of armed criminal action. In his motion for new trial, Gates alleged that the trial court erred when it sustained the State's motion *in limine* barring the injection of the issue of self-defense both before and during trial, and after hearing Gates's offer of proof. The motion for new trial also argued that it was error to sustain the State's objections to Gates's trial testimony that he was nervous and that he

8

turned around in the car to find a gun in his face because it deprived Gates of his right to testify.

The motion for new trial was denied. The trial court entered a judgment ("Judgment") convicting Gates in accordance with the jury's verdicts, and sentencing Gates to twenty years for felony murder and seven years for armed criminal action, with the terms to be served concurrently.

Gates appeals.

## Summary of Issues on Appeal/Standard of Review

Gates asserts three points on appeal. In his first point, Gates argues that the trial court deprived him of his constitutional right to testify in his own defense by excluding testimony describing Gates's version of what occurred when the Victim was shot, and that he would have been acquitted had the excluded evidence been admitted. Gates's second point asserts that the trial court plainly erred in failing to instruct the jury on self-defense *sua sponte* because there was substantial evidence to support the defense, and the trial court misapplied *Oates* by ruling that self-defense was not available for felony murder predicated on a forcible felony. In his third point, Gates claims that the trial court plainly erred in failing to strike a venireperson for cause *sua sponte*.

Gates's first point on appeal involves an evidentiary ruling. The trial court has broad discretion in making evidentiary rulings. *State v. Wilson*, 602 S.W.3d 328, 332 (Mo. App. W.D. 2020). As such, we review the trial court's decision whether to admit or exclude evidence for an abuse of discretion. *Id.* A trial court abuses its discretion when its ruling is "clearly against the logic and circumstances then before the court and is so arbitrary and

9

unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Brandolese*, 601 S.W.3d 519, 533 (Mo. banc 2020) (quoting *State v. Brown*, 939 S.W.2d 882, 883-84 (Mo. banc 1997)). If, however, "reasonable persons [could] differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.* (quoting *Brown*, 939 S.W.3d at 883-84). "Our review is for prejudice, not error alone; and we 'will reverse only if the error was so prejudicial [that] it deprived the defendant of a fair trial.'" *Wilson*, 602 S.W.3d at 332 (quoting *State v. Hein*, 553 S.W.3d 893, 896 (Mo. App. E.D. 2018)). "An error is prejudicial only if there is a reasonable probability that but for the court's error the outcome of the trial would have been different." *Id.* (quoting *State v. Harris*, 358 S.W.3d 172, 174 (Mo. App. E.D. 2011)).

Gates's concedes that his second and third points on appeal were not preserved for appellate review. Unpreserved trial errors are reviewed at our discretion for plain error. *State v. Garretson*, 598 S.W.3d 643, 649 (Mo. App. W.D. 2020); *see also* Rule 30.20.[5] Plain error is error which "affects[] substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. Plain error requires a two-step evaluation:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

---

[5]All rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

10

*Garretson*, 598 S.W.3d at 649 (quoting *State v. Baumruk*, 280 S.W.3d 600, 607-08 (Mo. banc 2009)).

## Analysis

We address Gates's points on appeal out of order, as Gates's second point on appeal addressing the trial court's plain error in failing to instruct on self-defense informs our discussion of Gates's first point on appeal addressing the exclusion of evidence.

### *Point Two: The Trial Court did not Plainly Err in Failing to Instruct on Self-Defense*

In his second point on appeal, Gates argues that the trial court plainly erred in failing to instruct the jury on self-defense because there was substantial evidence that Gates reasonably believed that deadly force was necessary to protect himself, and because the trial court misapplied *Oates* and section 563.031.1(3) in ruling that self-defense was not available for felony murder predicated on a forcible felony. Gates acknowledges that he did not proffer a self-defense instruction for felony murder in the second degree.[6] Thus, Gates asks us to review the trial court's failure to instruct the jury on self-defense for plain error.

Gates's request for plain error review relies heavily on settled law involving a trial court's obligation to instruct on self-defense so long as there is substantial evidence of the defense in the record. *State v. Barnett*, 577 S.W.3d 124, 126 (Mo. banc 2019). "An appellate court, when confronted with the argument that the trial court erred in refusing to instruct on self-defense, must view the evidence and all reasonable inferences in the light

---

[6]Gates did proffer self-defense instructions related to refused instructions for conventional murder in the second degree and purported lesser-included offenses.

11

most favorable to the defendant." *State v. Endicott*, 600 S.W.3d 818, 823 (Mo. App. E.D. 2020) (quoting *State v. Miller*, 91 S.W.3d 630, 632 (Mo. App. W.D. 2002)). "Whether a use of force justification defense has been raised by the evidence is a question of law, which we review *de novo*." *Id.* (citing *State v. Cummings*, 514 S.W.3d 110, 116 (Mo. App. W.D. 2017)). "Substantial evidence" to require submission of a justification defense "means enough evidence to 'put[] a matter in issue.'" *Id.* (quoting *State v. Avery*, 120 S.W.3d 196, 200 (Mo. banc 2003), *overruled on separate grounds by Barnett*, 577 S.W.3d at 132 n.10). In short, "[i]f a justification defense is injected into the case by *any* evidence, the judge must instruct, *even if the defendant does not desire* such an instruction." *Id.* at 824 (quoting *Cummings*, 514 S.W.3d at 117) (emphasis in original). "If . . . there is substantial evidence to support a self-defense instruction, it is reversible error for the trial court to fail to submit a self-defense instruction to the jury under plain error review." *State v. Bolden*, 371 S.W.3d 802, 805 (Mo. banc 2012).

At first blush, these established legal principles appear to be compelling and controlling. However, their application is necessarily premised on an unstated foundational principle. It can only be error to fail to instruct on self-defense if self-defense is legally available as a defense to the crime charged. In other words, even if substantial evidence in a case suggests a defendant used force in response to threatened force, that evidence will neither support nor require the submission of a self-defense instruction if justification is not available as a defense to the charged offense as a matter of law. That this foundational principle serves as the essential starting point for determining whether self-defense must

12

be instructed in a case was addressed in *Oates*. Before discussing *Oates*, however, we first address the parameters of the defense of justification in this state.

Chapter 563 addresses the defense of justification. Certain provisions within the chapter were amended in 2007, including provisions which are directly applicable to Gates's case. Section 563.074 is an example. Added in 2007, the provision states, in pertinent part:

> 1. . . . a person who uses force as described in section[] 563.031 . . . is justified in using such force and such fact shall be an absolute defense to criminal prosecution . . . .

Section 563.074.1. The provision's cross-reference to section 563.031 expresses a clear intent that the absolute nature of the use of force as a defense to criminal prosecution depends on whether force has been used as permitted in section 563.031.

Section 563.031 addresses the use of force in defense of oneself or another person. It provides, in pertinent part, at subsection .1 as follows:

> A person may, subject to the provisions of subsection 2 of this section,[7] use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself . . . from what he . . . reasonably believes to be the use or imminent use of unlawful force by such other person . . . .

Section 563.031.1 is followed by the word "unless," and then describes three exceptions. Applicable here is the exception set forth at section 563.031.1(3), which excludes

---

[7]Subsection 2 of section 563.031 provides in pertinent part that "[a] person shall not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless: (1) He . . . reasonably believes that such deadly force is necessary to protect himself . . . against death, serious physical injury, or any forcible felony." We need not further address this subsection, as it is undisputed that if Gates were otherwise entitled to admit the testimony excluded by the trial court, it would have fallen within the scope of the plain language of subsection 2, as Gates used deadly force upon the Victim, and Gates claims that the Victim was threatening the use of force that could have caused his death or serious physical injury.

13

justification as a defense to the use of physical force if "[t]he actor was attempting to commit, committing, or escaping after the commission of a forcible felony." This exception to the defense of justification was added in 2007, at the same time section 563.074.1 was enacted, broadcasting the clear and plain intent to exclude as an absolute defense to criminal prosecution the use of physical or deadly force where an actor was committing, attempting to commit, or escaping from commission of a forcible felony. In other words, even if an actor reasonably believed that the use of physical or deadly force was necessary to defend himself from the use or imminent use of unlawful force by another, self-defense is not available as a defense, as a matter of law, if the actor was committing, or attempting to commit, or escaping from committing, a forcible felony.

Gates sidesteps the plain language of sections 563.074.1 and 563.031.1(3). Similar to the argument he made in connection with his offer of proof at trial, Gates argues in his second point on appeal that despite the plain language of section 563.031.1(3), he was nonetheless entitled to a self-defense instruction on felony murder predicated on a forcible felony because of the Missouri Supreme Court's decision in *Oates*. Gates also argues that he was entitled to a self-defense instruction on felony murder because the State's verdict director required the jury to find that he used force on the Victim by shooting him, and because MAI-CR 4th 406.06 contemplates an instruction for self-defense for felony murder predicated on the commission or attempted commission of a forcible felony. We address these arguments separately.

    **(i)**      *Oates* **does not hold that self-defense is a defense to felony murder predicated on a forcible felony**

14

In *Oates*, a defendant was charged with second-degree felony murder predicated on the felony of attempting to distribute a controlled substance. 540 S.W.3d at 859-60. In the process of perpetrating this felony, the victims stole the drugs Oates was selling. *Id.* at 859. Oates fell into the back seat as the victims' car sped away. *Id.* Oates then shot both victims, and testified at trial that he did so after the victims pulled guns on him. *Id.* at 859-60. Though the jury heard this evidence, the trial court refused a self-defense instruction for felony murder, "reasoning self-defense was not a defense to felony murder as a matter of law." *Id.* at 860.

The Supreme Court acknowledged that it had "previously held self-defense, as a matter of law, is not a defense to felony murder." *Id.* (citing *State v. Newman*, 605 S.W.2d 781, 786 (Mo. 1980); *State v. Burnett*, 293 S.W.2d 335, 343 (Mo. banc 1956)). The Supreme Court also acknowledged that statutory changes to the law of self-defense enacted in 2007, including the addition of sections 563.074.1 and 563.031.1(3), had not been addressed by the Court. *Id.* The effect of the 2007 amendments on pre-2007 decisional law precluding self-defense as a defense to felony murder was thus at issue in *Oates*.

Unlike Gates's circumstances, the underlying felony in *Oates* was **not** a forcible felony. As such, section 563.031.1(3), which precludes justification as a defense if the actor was committing or attempting to commit a forcible felony, did not apply to Oates. Oates took advantage of this fact to argue that his felony murder charge was controlled by section 563.074.1, which describes self-defense as an absolute defense to **any** criminal prosecution involving the use of force so long as engaged in as provided by section 563.031. *Oates*, 540 S.W.3d at 861.

15

The Supreme Court disagreed. The Court noted that "[a] person commits felony murder if he or she 'commits any felony and, in the perpetration of that felony, another person dies as a result of the perpetration of that felony.'" *Id.* (quoting *State v. Burrell*, 160 S.W.3d 798, 803 (Mo. banc 2005)). "The underlying felony does not have to involve the use of force." *Id.* (citing section 565.021.1(2)). And "[i]t does not matter whether the person died as a result of the defendant's or someone else's use of lawful force, unlawful force, or no force at all." *Id.* "It matters only that the person died as a result of the defendant's commission of the underlying felony, without regard to the defendant's role in the fatal act." *Id.* "In other words, unless the underlying felony involves the defendant's use of force, felony murder is not prosecuting the defendant's use of force[] [and is] [i]nstead . . . prosecuting a different act--the commission of a felony that results in the death of a person." *Id.* at 862. Thus, because Oates's felony murder charge was predicated on an underlying felony that did not prosecute the use of force as an essential element, Oates could not, as a matter of law, rely on self-defense, which is a defense to the use of force. *Id.* *Oates* effectively held that subsequent to the 2007 amendments to Chapter 563, self-defense remains unavailable, as a matter of law, as a defense to felony murder predicated on the commission or attempted commission of a non-forcible felony.

Gates's case involves the flip side of the question presented in *Oates*. We must now address the effect of the 2007 amendments to Chapter 563, and in particular the addition of sections 563.074.1 and 563.031.1(3), on pre-2007 decisional law precluding, as a matter of law, self-defense as a defense to felony murder predicated on the commission or attempted commission of a forcible felony.

16

Gates misreads *Oates* for the proposition that since his felony murder charge was predicated on a forcible felony, and thus on a felony that prosecuted the use of force as an essential element, he was entitled to rely on self-defense as a defense to felony murder. But this argument ignores that the only reason Oates could argue that the 2007 amendments to Chapter 563 abrogated decisional law barring self-defense as a defense to felony murder was **because section 563.031.1(3) did not apply** to his case. Gates is not similarly positioned. Plainly, the felony Gates was accused of committing or attempting to commit was a forcible felony subject to the exception described in section 563.031.1(3). As such, though section 563.074.1 declares self-defense an absolute defense to criminal prosecution where force is used as provided in section 563.031, section 563.031.1(3) precludes the defense as a matter of law where physical or deadly force is used to defend the threatened use of force by another while the actor is committing, attempting to commit, or escaping from the commission of a forcible felony. *Oates* does not hold otherwise. Although the Supreme Court observed that "[i]f the underlying felony involves the defendant's use of force, then a prosecution for felony murder would be a prosecution for the defendant's use of force," the Court went on to explain that "[h]owever, [section] 563.031.1(3) precludes self-defense from being an available justification if the defendant was committing a 'forcible felony.'" *Oates*, 540 S.W.3d at 862 n.5. *Oates* recognized in dicta, and we now hold, that sections 563.074.1 and 536.031.1(3) combine to codify pre-2007 decisional law declaring self-defense unavailable as a matter of law as a defense to felony murder predicated on the commission or attempted commission of a forcible felony.

17

**(ii)** **The State's verdict director for felony murder did not entitle Gates to a self-defense instruction**

Gates next argues that because the State's verdict director for felony murder posited in paragraph second that Gates "caused the death of [the Victim] by shooting him," the State converted felony murder into a crime prosecuting the use of force, opening the door to self-defense as an available defense. We disagree.

The essential elements of the crime of second-degree felony murder are the commission or attempted commission of any felony, and the death of any person as a result of the perpetration or attempted perpetration of such felony, or as a result of the immediate flight from the perpetration or attempted perpetration of such felony. Section 565.021.1(2). As the Supreme Court noted in *Oates*, it is irrelevant how the person is killed--whether at the hand of the defendant or another, and whether by "use of lawful force, unlawful force, or no force at all," so long as the person "died as a result of the defendant's commission of the underlying felony, without regard to the defendant's role in the fatal act." 540 S.W.3d at 861.

The State's felony murder verdict director was patterned after MAI-CR 4th 414.06, and posited in paragraph second a brief description of the evidence explaining who killed the Victim as required by Notes on Use 4. But the mere fact that paragraph second of this instruction required the State to posit the evidence explaining how the Victim died does not alter the essential elements of the crime of felony murder. Felony murder does not prosecute the use of force to cause a person's death as a matter of law, even where it is the defendant who kills the victim. *Oates*, 540 S.W.3d at 861-62 (holding that felony murder

predicated on a felony that does not include the use of force as an essential element does not prosecute the use of force even though the defendant's acts directly caused the death of a person). Rather, where felony murder is predicated on a forcible felony, the only use of force for which a defendant is being prosecuted is the use of force that is an essential element of the underlying felony, and not the force used by the defendant to kill a victim. *Oates*, 540 S.W.3d at 862 ("[U]nless the underlying felony involves the defendant's use of force, felony murder is not prosecuting the defendant's use of force. Instead, felony murder is prosecuting a different act altogether--the commission of a felony that results in the death of a person.")

### (iii)    MAI-CR 4th 406.06[2] is not applicable to Gates's felony murder charge

Finally, Gates argues that MAI-CR 4th 406.06 supports the giving of a self-defense instruction in his case. That instruction provides, in pertinent part, that "[i]n this state the use of physical force (, including the use of deadly force,) to defend oneself is lawful in certain situations." MAI-CR 4th 406.06. The instruction then directs the selection of appropriate paragraphs depending on the evidence. Relevant to Gates's argument is the material at paragraph [2] which provides:

> [2] (And a) (But a) (A) person is not justified in using physical force to defend himself if he was (attempting to commit) (committing) (escaping after the commission of) [Insert name of forcible felony, which cannot be the felony for which the defendant is charged and is claiming self-defense.]

MAI-CR 4th 406.06[2].

Though at first blush, it might appear that this paragraph is applicable to Gates's case, the instructions for use of the paragraph state otherwise. The material at paragraph

19

[2] is to be used "only if there is evidence that defendant's use of physical force was in connection with the commission of or escape after the commission of a forcible felony." *Id.* However, "[t]he forcible felony cannot be the felony for which the defendant is charged and is claiming self-defense. See Notes on Use 6."

> Notes on Use 6 to MAI-CR 4th 406.06 explains:
>
> [I]f the defendant is charged with assault on a bank guard and claims self-defense to save his life by shooting the guard, and if there is evidence that at the time defendant was robbing the bank, the jury will be instructed by including [2]. The forcible felony referred to in those sections will be the bank robbery. The reference to a forcible felony will be a felony other than the assault or homicide offense for which the defendant is claiming self-defense. If the defendant is charged with assault and there is no evidence that the defendant was committing any other forcible felony at the time of the charged offense, the material in [2] will not be used.

MAI-CR 4th 406.06 Notes on Use 6 does not contemplate the scenario presented in Gates's case. Gates was charged with felony murder predicated on the commission of the forcible felony of robbery of the Victim. But, felony murder does not prosecute the use of force-- it is not a forcible felony. The only force being prosecuted in Gates's case was the force essential to prove that Gates was committing or attempting to commit robbery. There was no evidence that Gates was committing any other forcible felony at the time the Victim was shot besides the forcible felony with which he was effectively charged--robbery as the predicate to felony murder. The material in [2] of MAI-CR 4th 406.06 is not applicable to Gates's circumstances.[8]

---

[8]The material at MAI-CR 4th 406.06[2] would be applicable in a case where a defendant is charged with a homicide offense *other than felony murder*, and with another forcible felony, such as robbery in the first degree. In such a scenario, the use of force would be an essential element to *both* charged offenses, and self-defense would be available as a lawful defense to the charged homicide offense but not for the separate forcible felony charge. To address the effect of the forcible felony (and thus of section 563.031.1(3)) on what would otherwise be a required

20

This conclusion is reinforced by considering a slightly different scenario from the events Gates's alleges. Had the Victim pulled a gun on Gates while Gates and Ramirez were purportedly attempting to rob the Victim, and had Ramirez shot the Victim, Gates could still be charged with felony murder predicated on the forcible felony of robbery. He would be no less culpable because the Victim was shot by Ramirez. Yet, there is no question that MAI-CR 4th 406.06[2] would not be applicable to submission of Gates's felony murder charge. It would be illogical and incongruent to require the use of MAI-CR 4th 406.06[2] because Gates shot the Victim, but not where Ramirez shot the Victim, when the cause of the Victim's death is irrelevant to Gates culpability for felony murder.

MAI-CR 4th 406.06[2] is not, therefore, in conflict with section 563.031.1(3) or with *Oates*. Each consistently supports the conclusion that, as a matter of law, self-defense is not available as a defense to felony murder, and thus should not be instructed, where the actor was committing, attempting to commit, or escaping from committing a forcible felony at the time the actor used physical (deadly) force to protect himself against the use or threatened use of force by another.

Of course, if a defendant disputes, as Gates does, that he or she was committing or attempting to commit the forcible felony serving as the predicate for felony murder, that issue of fact must be determined by the jury. However, that disputed fact does *not* open the door to the right to inject the issue of self-defense into a felony murder case in order to

---

instruction submitting self-defense on the conventional homicide charge, MAI-CR 4th 406.06[2] must be submitted. In other words, MAI-CR 4th 406.06[2] serves to negate a defense that *is otherwise available as a matter of law*. That rationale is not served when felony murder is the charged offense, as self-defense is not available as a defense to felony murder as a matter of law, whether predicated on a forcible or a non-forcible felony.

21

require the submission of a self-defense instruction. Yet, as we discuss, *infra*, in connection with Gates's first point on appeal, that is precisely what Gates attempted to do at trial, and attempts to do on appeal.

Instead, the determination of whether Gates was committing or attempting to commit the forcible felony of robbery was instructed by the verdict director for felony murder, and by the related instruction submitting the predicate forcible felony of robbery. Here, Instruction No. 6 was the verdict director for felony murder. It instructed, among other things, that to find Gates guilty of felony murder, the jury must find in paragraph first that Gates "committed robbery in the first degree as submitted in Instruction No. 8." Instruction No. 8 instructed the jury on robbery in the first degree, and required the jury to find that Gates committed the crime if it found beyond a reasonable doubt:

> First, that on or about January 2, 2018, . . . [Gates] took a gun, which was property in the possession of [the Victim], and
>
> Second, that [Gates] did so for the purpose of withholding it from the owner permanently, and
>
> Third, that [Gates] in doing so used physical force on or against [the Victim] for the purpose of preventing resistance to the taking of the property, and
>
> Fourth, that in the course of taking the property, [Gates] was armed with a deadly weapon.

The jury was further instructed in Instruction No. 7 that if it "[had] reasonable doubt as to whether [Gates] committed robbery in the first degree, or that [the Victim] was killed as a result of the perpetration of robbery in the first degree," it must find Gates not guilty of felony murder in the second degree.

22

The jury's determination about whether Gates's committed or was attempting to commit robbery in the first degree thus controls the ultimate issue in the case--whether Gates could be found guilty of felony murder. Consistent with the fact that self-defense is not a defense to felony murder, the MAI-CR 4th 406.06[2] self-defense instruction was not required to determine whether Gates committed the predicate felony of robbery, and would have added nothing but confusion to the case. *See State v. Starr*, 998 S.W.2d 61, 66 (Mo. App. W.D. 1999) (holding that where jury was called upon to determine whether a victim was killed during the commission of an attempted robbery, "[s]ubmission of a self-defense instruction would not have affected the jury's determination either way, because either [the defendant] was guilty of attempted robbery in the first degree and, therefore, felony murder, or he was guilty of neither").[9]

---

[9]*Starr* reached this conclusion in the context of analyzing prejudicial error in failing to instruct on self-defense, and thus held that "[w]hen the inclusion of the self-defense instruction is unnecessary, its omission is clearly not prejudicial." 998 S.W.2d at 66. But *Starr* did not hold that a self-defense instruction is permissible or required in a felony murder case predicated on a forcible felony. *Starr* simply recognized that *Newman* and *Burnett*, both of which categorically held that self-defense was not available as a defense to felony murder, pre-dated MAI-CR 3d. *Id.* at 65. Before MAI-CR 3d, the verdict directors for all homicide offenses *except* felony murder included language to permit the submission of self-defense. *Id.* at 64. In MAI-CR 3d, "none of the verdict directors for homicide make reference to self-defense." *Id.* at 65. "Self-defense is now a separate instruction and its Notes on Use do not [expressly] preclude a self-defense instruction being submitted for felony murder." *Id.* *Starr* did not tackle whether the changes in MAI-CR 3d abrogated *Newman* and *Burnett*, and instead focused on whether, even assuming instructional error, prejudice had been demonstrated as to require the verdict to be overturned. *Id.* at 65-66.

The same is true with respect to this court's reference to *Starr* in *State v. Peal*, 393 S.W.3d 621, 634 n.11 (Mo. App. W.D. 2013), where we observed that the adoption of MAI-CR 3d and the resulting inclusion of a separate instruction for self-defense not tied to the verdict directors for homicide crimes did not expressly exclude application of the self-defense instruction to felony murder. Neither *Starr* nor *Peal* abrogated the Supreme Court's decisions in *Newman* or *Burnett*--nor could they. Both opinions simply noted that the modification of jury instructions on self-defense raised an as yet undetermined question--the effect of the modification on what had been settled law with respect to the availability of self-defense as a defense to felony murder.

MAI-CR 4th continued the scheme adopted in MAI-CR 3d by including an instruction dedicated to the subject of self-defense. That this dedicated instruction does not alter decisional law pre-dating MAI-CR 3d has now been resolved by *Oates* (which held self-defense is unavailable as a matter of law to defend against felony murder predicated on a felony that does not prosecute the use of force), and by this Opinion (which holds that self-defense is unavailable as a matter of law to defend against felony murder predicated on a forcible felony).

23

The trial court did not commit error, plain or otherwise, in failing to submit a self-defense instruction. Because Gates was not entitled to a self-defense instruction as a matter of law, we do not address his contention that substantial evidence existed in the record to explain that Gates's use of deadly force on the Victim was in response to the Victim's threatened use of deadly force on Gates.[10] The trial court did not err in failing to instruct on self-defense *sua sponte*.

Point Two is denied.

*Point One: The Trial Court did not Err in Excluding Portions of Gates's Testimony*

In opposition to Gates's second point on appeal, which argues that a self-defense instruction was required because the jury heard substantial evidence that Gates acted in self-defense when he shot the Victim, Gates argues in his first point on appeal that it was error to exclude portions of his testimony "about what occurred at the time the shot was fired" because a criminal defendant has the constitutional right to testify in his own behalf at trial. [Appellant's Brief, p. 28] Gates's first point on appeal concedes that section 563.031.1(3) precludes justification as a defense in his case, but argues that "nothing in the statute precludes a defendant from taking the stand and telling the jury what occurred at the time of the shooting." [Appellant's Brief, p. 45] Gates argues that exclusion of portions of his testimony deprived him of the right to testify in his own defense.

**(i)      Gates's constitutional right to testify in his own defense was not categorically denied by the exclusion of portions of his testimony**

---

[10]Though we do not address this contention in connection with Gates's second point on appeal, it is worth noting that Gates's contention that the jury heard substantial evidence on the subject of self-defense is in diametric opposition to Gates's first point on appeal, which claims **prejudicial** error in the exclusion of discrete aspects of his story about what happened on the day the Victim was robbed and shot.

24

A criminal defendant's right to testify in his own defense "at a criminal trial has sources in several provisions of the Constitution." *Rock v. Arkansas*, 483 U.S. 44, 51 (1975). "The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony." *Id.* In addition, "[t]he right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call 'witnesses in his favor' . . . ." *Id.* at 52. This logically includes a defendant's "right to testify himself." *Id.* "In fact, the most important witness for the defense in many criminal cases is the defendant himself." *Id.* Finally, "[t]he opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Id.*

A criminal defendant's right to testify in his own defense cannot be restricted by "a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." *Id.* at 55. *Rock* found that a statute which *per se* excluded hypnotically refreshed testimony infringed on a criminal defendant's constitutional rights to testify on his own behalf because the statute mechanically and arbitrarily determined that hypnotically refreshed testimony was not competent or trustworthy, when competence and trustworthiness could have been weighed and determined by the jury. *Id.* at 51-62. The United States Supreme Court reached a similar conclusion in *Chambers v. Mississippi*, 410 U.S. 284 (1973), where a state hearsay rule and a witness "voucher" rule operated to mechanically and arbitrarily preclude a criminal defendant from cross-examining his own witness about the confessions of others to the crime. *Id.* at 295-97. *Chambers* held that a state rule of evidence may "not be applied mechanistically to defeat the ends of justice,"

25

but instead must be applied in a manner that meets the fundamental standards of due process. *Id.* at 302.

Gates relies on these cases to argue that the trial court's exclusion of portions of his testimony categorically deprived him of the right to testify. However, Gates has not identified a Missouri statute or rule of evidence that arbitrarily or mechanically required the *per se* exclusion of portions of his testimony, or that was applied by the trial court to do so. Section 563.031.1(3) does not address the admissibility of evidence, and instead addresses the availability of a legal defense to the commission of a crime. The trial court remained free to assess, as in any case, whether the excluded portions of Gates's testimony were relevant, and thus admissible, *for the purpose offered by Gates*. Neither *Rock* nor *Chambers* foreclose this discretionary exercise. In fact, *Rock's* discussion about the exclusion of evidence presumes, in the first instance, that the evidence is relevant, as the Court held that "the right to present *relevant* testimony is not without limitation." 483 U.S. at 55 (emphasis added). And *Chambers* observed that in the exercise of the right to call witnesses, "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." 410 U.S. at 302.

The trial court's exercise of discretion in this case to exclude portions of Gates's trial testimony did not amount to an arbitrary or mechanical *per se* exclusion of evidence that categorically deprived Gates of the right to testify in his own defense. Instead, Gates's efforts to admit evidence through his testimony were appropriately subjected to the trial court's assessment of admissibility of the proffered evidence *for the purpose offered*.

26

Gates's right to testify in his own defense is not exempt from this discretionary exercise of trial court authority. *Id.*

**(ii)    Gates did not preserve the claim of error asserted in his first point on appeal with respect to the excluded portions of his testimony**

"To preserve a claim of improperly excluded evidence, the proponent must attempt to present the excluded evidence at trial and, if it remains excluded, make a sufficient offer of proof." *State v. Hunt*, 451 S.W.3d 251, 263 (Mo. banc 2014) (citing *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003)). "The purpose of an offer of proof is to preserve the evidence so the appellate court 'understands the scope and effect of the questions and proposed answers.'" *Id.* (quoting *State v. Tisius*, 92 S.W.3d 751, 767-68 (Mo. banc 2002)). "Offers of proof must show what the evidence will be, the purpose and object of the evidence, and each fact essential to establishing admissibility." *Id.* (citing *Tisius*, 92 S.W.3d at 767-68). "Offers of proof must be specific and definite." *Id.*

In addition, to preserve a claim of improperly excluded evidence, the specific allegation of error must be included in a motion for new trial. Rule 29.11(d); *State v. Clay*, 533 S.W.3d 710, 718 (Mo. banc 2017) ("An issue is not preserved for appellate review if the issue is not included in the motion for new trial.")

Finally, to properly preserve an issue involving the exclusion of evidence for appellate review, a party "cannot rely on a theory on appeal different from the one offered at trial." *State v. Thomas*, 590 S.W.3d 441, 445 (Mo. App. S.D. 2019) (quoting *State v. Sykes*, 480 S.W.3d 461, 465 (Mo. App. S.D. 2016)). "In the context of preserving for appellate review alleged error in the trial court's exclusion of proffered evidence, a

27

defendant's theory of admissibility 'must be presented to or decided by the trial court.'" *Id.* (quoting *State v. Blurton*, 484 S.W.3d 758, 778 (Mo. banc 2016)). A party "cannot argue a theory of relevance on appeal that he did not advance in the trial court." *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 455 n.6 (Mo. banc 2014). "Missouri courts strictly apply these principles because a trial judge should be given the opportunity to reconsider his or her ruling against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." *Thomas*, 590 S.W.3d at 445 (quoting *Sykes*, 480 S.W.3d at 465); *see also Lozano*, 421 S.W.3d at 455 n.6 (holding that to allow an appellant to argue that excluded evidence was relevant for a reason not given at the time evidence was offered at trial "would violate the principle 'that this Court will not, on review, convict a lower court of error on an issue which was not put before it to decide'") (quoting *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982)).

### a. Gates's offer of proof

After the State rested, Gates's counsel asked the trial court to reconsider its ruling on the State's *in limine* motion "***barring us from using self-defense in this case***." [Tr. 475] (Emphasis added.) Importantly, though Gates had earlier represented to the trial court a belief that *Oates* foreclosed reliance on self-defense in all felony murder cases, Gates's counsel now argued that "[a]fter reviewing *Oates*," counsel believed "it is distinguishable" because Gates was disputing commission of the felony underlying his felony murder charge. [Tr. 475-76] Counsel continued:

28

In addition to that, Judge, in *Oates* on page 862 the Court says, "In other words, unless the underlying felony involves the defendant['s] use of force, felony murder is not prosecuting the defendant's use of force. Instead felony murder is prosecuting a different act to the commission of a felony that results in the death of a person."

Judge, in this case, the underlying felony is a forcible felony. Because the State is alleging that forcible use in that felony, Judge, we believe that we should get to argue self-defense to rebut that that use of force was not justifiable given the fact that we are, again, disputing that any underlying felony occurred.

With that the case does cite the statute . . . [section] 563.031.1(3), that that [sic] statute does say we are precluded from using self-defense as a justification if the defendant was committing a forcible felony.

Judge, I think that is a disagreement between what the passage of the case that I just read versus the statute. Judge, I believe that the passage that I just read in the case would suggest that we are able to use self-defense because the State is saying that the forcible felony was being committed, even though the statute says that we're not allowed to argue that.

Because there is that difference, Judge, I believe that under the Rule of [Lenity] that any disagreement between the case law and the statutes that the benefit would be given to the defendant. And because of those items that we believe are distinguishable in *Oates* that we should be allowed to use self-defense in this case.

[Tr. 476-77]

The trial court ruled that it did not see a disagreement between *Oates* and section 563.031.1(3), and that self-defense was not available as a defense to Gates. In response, Gates's counsel asked permission to make a detailed offer of proof through Gates's testimony "***of what the defendant's testimony would be if allowed to testify about self-defense***." (Emphasis added.) Gates's request to make an offer of proof did not identify any other purpose or object for permitting Gates to fully testify beyond injecting self-defense as an absolute defense to felony murder.

29

Following the offer of proof, the trial court rejected the offer and noted that it "is well supported by Missouri case law and by the Missouri statutes that you may not use self-defense in this kind of context." Gates's counsel did not urge an alternative basis for admitting those portions of Gates's testimony that the trial court believed injected the issue of self-defense. Specifically, Gates's offer of proof did not argue that Gates should be permitted to fully describe his version of the events leading to the Victim being shot because even if inadmissible to inject self-defense as a justification for felony murder, the testimony was independently relevant to permit Gates to simply tell his story, including contesting the State's contention that he committed robbery, the felony that served as the predicate for Gates's felony murder charge.

Gates's offer of proof did not preserve the issue raised in Gates's first point on appeal. *In re King*, 340 S.W.3d 656, 659 (Mo. App. S.D. 2011) ("A party is obligated 'to bring to the attention of the trial court its position as to relevancy of evidence offered. Such position should be included in the offer of proof.'") (quoting *Frein v. Madesco Inv. Corp*. 735 S.W.2d 760, 762 (Mo. App. E.D. 1987)). The dissent does not address Gates's offer of proof, and instead focuses on arguments Gates made in response to the State's motion *in limine*, during voir dire, and before and during opening statements, to conclude that Gates's preserved the claim of error raised in his first point on appeal. But Gates's earlier arguments preserve nothing for our review. "Even if we construe[] [Gates's] pre-trial arguments against the [State's] motion in limine broadly enough to encompass [the claim asserted in Gates's first point on appeal], a ruling in limine is interlocutory and subject to change during trial." *Id.* (citing *State v. McCullum*, 63 S.W.3d 242, 259 (Mo. App. S.D. 2001)).

30

"A motion in limine, and by extension, supporting or opposing arguments at that time preserve nothing for appeal." *Id.* "The trial court's ruling on a motion in limine is a preliminary ruling on the admissibility of evidence and is subject to change throughout the course of trial." *Henderson v. Fields*, 68 S.W.3d 455, 468 (Mo. App. W.D. 2001) (citing *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 646 (Mo. banc 1997)). "'Consequently, when a motion in limine is granted, the proponent of the evidence, in order to preserve the issue for appellate review, must attempt to present the excluded evidence at trial and, if an objection to the proffered evidence is sustained, the proponent must then make an offer of proof.'" *Id.* at 469 (quoting *Evans v. Wal-Mart Stores, Inc*., 976 S.W.2d 582, 584 (Mo. App. E.D. 1998)).

The same is true for Gates's arguments regarding admissibility of his anticipated trial testimony during voir dire, and before and during opening statements. "The 'unsworn remarks of counsel in opening statements, during the course of trials or in arguments are not evidence of the facts asserted.'" *State v. McFadden*, 369 S.W.3d 727, 742 (Mo. banc 2012) (quoting *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006)), *cert. denied*, 568 U.S. 999 (2012). Thus, the arguments made by Gates, and the limitations imposed by the trial court, during voir dire and opening statement have no bearing on whether Gates preserved the claim of evidentiary error raised in his first point on appeal. *See, e.g.*, *Collins v. Hertenstein*, 90 S.W.3d 87, 100-01 (Mo. App. W.D. 2002) (holding that where party challenged exclusion of evidence at trial but could only point to comments impacting admissibility of the evidence made during voir dire, opening statement, and closing argument, and could not identify an attempt to actually introduce the evidence, the claim

31

of error is not preserved for appellate review).  Rather, as noted above, the first step in preserving a claim that evidence has been improperly excluded at trial is to attempt to admit the evidence, and to explain at the time of the proffer the rationale for admitting the evidence.  *Hunt*, 451 S.W.3d at 263; *Lozano*, 421 S.W.3d at 453 n.4 (holding that to claim error in the exclusion of evidence at trial, "the proponent must offer the evidence at trial and make a detailed offer of proof concerning that evidence when the trial court orders that it be excluded").  That cannot be accomplished during an *in limine* hearing, in voir dire, or in an opening statement.

Moreover, as previously noted, whatever arguments or positions Gates may earlier have advanced or conceded, by the time of his offer of proof, Gates was plainly taking the position that pursuant to *Oates*, and despite section 563.031.1(3), self-defense remained available as an absolute defense to felony murder predicated on a forcible felony.  The dissent's contentions to the contrary, by rejecting Gates's argument for admission of all of Gates's testimony in connection with Gates's offer of proof, the trial court was ***not*** categorically depriving Gates of the opportunity to testify in his defense, and was ***not*** categorically depriving Gates of a meaningful opportunity to present a complete defense.  The trial court was simply ruling on the admissibility of evidence for the purpose offered.  As Gates did not seek admission of the entirety of Gates's testimony for any purpose other than its relevance to establish the defense of self-defense, we cannot conclude that the offer of proof preserved for our review the sweeping constitutional challenge raised in Gates's first point on appeal.

32

### b. *Gates's attempts to admit the excluded portions of his testimony after his offer of proof*

When Gates took the stand after his offer of proof, he testified that he and Ramirez picked up the Victim; that he had never met the Victim before; that the Victim announced he had a gun and showed his gun while the men were driving to the mall; that "there was a lot of movement" between the Victim and Ramirez in the car while on the way to the mall; that the Victim then started digging in his backpack; that he asked the Victim and Ramirez to stop moving around so much because "I don't know what type of time you guys are on. What you guys trying to do." Gates was then asked how he was feeling at the time, to which he responded "nervous." The State requested to approach the bench, and argued that this testimony went to the issue of self-defense and should be stricken. The trial court agreed, and the testimony was stricken.

Gates's testimony continued. Gates testified that when he pulled into the mall parking lot, Ramirez was outside of the car with the door open before Gates could put the car in park, and that Gates "happened to look back and see a gun in my face." The State asked to approach the bench, and argued that Gates's testimony about seeing a gun went directly to self-defense. The trial court agreed. However, Gates's testimony about seeing a gun was not stricken, leaving the evidence in the case for the jury to consider.

During the same bench conference, Gates's counsel asked: "Your Honor, can I ask if [Gates] thought [the Victim] was going to rob him?" The trial court said no, because "[t]hat goes toward self-defense again."

For the first time in connection with an actual attempt to admit evidence, Gates's counsel argued a rationale for admission that was not tied to establishing the defense of self-defense.  Gates's counsel argued, "I think this goes directly to one of the elements that the State was trying to prove.  They are trying to prove that [Gates] was attempting to rob someone.  He said while he was on the stand he was not attempting to rob anyone."  The trial court responded "You can ask if he was attempting to rob somebody."  Gates's counsel did so, and Gates denied that he was attempting to rob the Victim.  Gates's counsel then asked to approach the bench to clarify whether Gates could be asked why he shot the Victim.  The trial court stated that Gates could not be asked why he shot the Victim.  The State noted this testimony would be "confusing to the jury."  Gates's counsel argued that Gates was being deprived of a fair trial, but did not specifically articulate a basis for admitting testimony about why Gates shot the Victim independent from the issue of self-defense.  In other words, Gates's counsel did not tell the trial court how or why Gates's explanation for shooting the Victim would be independently relevant to negate an essential element in the State's case, even if not admissible to establish the defense of self-defense.

Though Gates's Brief fails to identify the testimony that was excluded because of the trial court's evidentiary rulings, [11]  by comparing the trial court's rulings and discussions at the bench during Gates's trial testimony with Gates's offer of proof, we have identified the discrete testimony that was excluded: (i) Gates's testimony that he was nervous in the

[11]Despite the fact it is Gates's obligation to identify the precise trial court error about which he complains on appeal, his Brief fails to specify the exact evidence he contends was erroneously excluded by the trial court's evidentiary rulings.  Instead, Gates's Brief speaks in sweeping terms about being denied the right to tell his story about "what occurred at the time the shot was fired."  [Appellant's Brief, p. 28]  Plainly, Gates was permitted to provide a great deal of testimony to tell his story about what occurred at the time the Victim was shot.

34

car with the Victim and Ramirez; (ii) Gates's testimony that the Victim was attempting to rob him; and (iii) Gates's testimony that he shot the Victim in a struggle over the Victim's gun.

With respect to Gates's testimony that he was feeling nervous, Gates never argued a basis for admission of this evidence except to inject the issue of self-defense. Gates's first point on appeal concedes that he was not entitled to claim self-defense. The claim of error asserted in Gates's first point on appeal is not preserved for our review insofar as Gates's testimony that he was feeling nervous.

Gates's counsel did argue that Gates's testimony that he was being robbed by the Victim was relevant to negate the State's contention that Gates was attempting to rob the Victim. And Gates's counsel argued that excluding Gates's testimony explaining why he shot the Victim violated Gates's right to testify in his defense. These arguments in support of admissibility were **not** made at the time of Gates's offer of proof. However, they were made in connection with contemporaneous attempts to admit the described testimony, and the anticipated answers to the questions counsel was not permitted to ask were included in Gates's offer of proof. Gates arguments were detached from his offer of proof, and were easily lost in the discussion about whether Gates should be permitted to inject self-defense into the case. Nonetheless, the arguments were minimally sufficient to bring to the trial court's attention Gates's position that testimony the Victim was attempting to rob him and explaining why he shot the Victim was admissible on an issue other than self-defense-- specifically to negate that Gates was attempting to rob the Victim, an essential element of the State's case.

35

### c. *Gates's motion for new trial*

Gates nonetheless faces another hurdle to preservation of his first point on appeal for appellate review. Gates motion for new trial alleges in paragraph 20 that:

> The trial court erred . . . when it sustained the State's objection to the Defendant testifying that when he turned around a gun was in his face in violation of [Gates's] right to testify, effective assistance of counsel, a fair trial, and due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 2, Section 10, and Sections 18(a) and 22(a) of the Missouri Constitution. [sic] not allowing defendant to testify regarding his version of the events.

However, despite Gates's contention to the contrary in his motion for new trial, Gates's testimony that he turned in the car to see the Victim pointing a gun in his face was not excluded from evidence. It is, in fact, a part of the "substantial evidence" of self-defense Gates's relies on in his second point on appeal to claim an entitlement to a self-defense instruction.

Gates's motion for new trial alleges in paragraph 19 that:

> The trial court erred . . . when it sustained the State's objection to [Gates] testifying that he was nervous and asked that the testimony be stricken from the record in violation of [Gates's] right to testify, effective assistance of counsel, a fair trial, and due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 2, Section 10, and Sections 18(a) and 22(a) of the Missouri Constitution.

As noted, above, Gates's testimony about being nervous was stricken, but it was never offered on any issue other than self-defense. Though paragraph 19 of the motion for new trial argues that exclusion of the evidence violated the enumerated constitutional rights, the motion for new trial fails to explain how evidence that Gates felt nervous was relevant to *any* issue in dispute in the case other than to inject the issue of self-defense. "Allegations

36

of error in a motion for new trial may not be changed or broadened on appeal." *State v. Johnson*, 358 S.W.3d 574, 576 (Mo. App. S.D. 2012) (citing *State v. Cobb*, 336 S.W.3d 201, 205 (Mo. App. S.D. 2011)). Gates's attempt on appeal to urge that he should have been able to testify that he was nervous because this evidence was relevant to establish that he was not attempting to rob the Victim was not raised at trial or in Gates's motion for new trial, and is not preserved for our review.

Gates's motion for new trial fails to identify any other claim of error relating to the exclusion of specific evidence.[12] Importantly, the motion for new trial does not allege error in excluding Gates's testimony that the Victim was attempting to rob Gates, or explaining why Gates shot the Victim. Gates's first point on appeal is not preserved for our review with respect to this excluded evidence. *State v. Register*, 487 S.W.3d 15, 17 (Mo. App. W.D. 2016) (holding that claim in motion for new trial that testimony was erroneously admitted because it was hearsay did not preserve unasserted claim in motion for new trial that testimony was improperly admitted because it bolstered other evidence); *Johnson*, 358 S.W.3d at 575-76 (holding that motion for new trial that charged error in excluding testimony from a victim about her alleged sexual activity did not preserve a claim of error relating to testimony from a different witness on the same subject). Gates's first point on

---

[12]Paragraphs 17 and 21 of Gates's motion for new trial claim error in sustaining the State's motion *in limine* regarding the issue of self-defense. Paragraph 18 of Gates's motion for new trial claims error is sustaining the State's motion *in limine* after hearing Gates's offer of proof as the effect was to bar Gates from testifying on the issue of self-defense. These paragraphs in the motion for new trial do not implicate Gates's first point on appeal which concede that self-defense was not available as a justification for Gates's crime, and instead argue, alternatively, that Gates was deprived of the right to tell his story. The arguments raised in paragraphs 17, 18, and 21 of Gates's motion for new trial are dispensed with by our discussion of Gates's second point on appeal, *supra*. We reject the dissent's view that these paragraphs in the motion for new trial preserve the issue raised in Gates's first point on appeal. The subject of the paragraphs plainly addresses the issue of self-defense, and not evidence offered on an issue other than self-defense.

appeal is not preserved for our review with respect to any of the discrete evidence in fact excluded by the trial court's evidentiary rulings.

**(iii)** **The trial court did not commit plain error in excluding portions of Gates's trial testimony**

Gates's unpreserved claim of error in his first point on appeal is subject at best to plain error review. Rule 30.20. That requires us to first determine whether Gates's claim of error involving the exclusion of evidence that he was nervous in the car, that the Victim was attempting to rob him, and explaining why he shot the Victim, facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, and if so, whether, in fact the claimed error resulted in manifest injustice or a miscarriage of justice. *Garretson*, 598 S.W.3d at 649 (citing *Baumruk*, 280 S.W.3d at 607-08). "Plain error must be evident, obvious, and clear." *State v. Walter*, 479 S.W.3d 118, 131 (Mo. banc 2016).

To establish second-degree felony murder, the State was required to prove that Gates committed or attempted to commit any felony, and that in the perpetration or attempted perpetration of that felony, a person was killed as a result. Section 565.021.1(2). Felony murder thus criminalizes the perpetration or attempted perpetration of the underlying felony that causes death, "without regard to the defendant's role in the fatal act." *Oates*, 540 S.W.3d at 861. "[T]he felony murder rule . . . permits the felonious intent necessary to a murder conviction to be shown by the perpetration of or attempt to perpetrate a felony." *State v. Henderson*, 551 S.W.3d 593, 602 (Mo. App. W.D. 2018) (quoting *State v. Rumble*, 680 S.W.2d 939, 942 (Mo. banc 1984)). As such, the issue to be determined at

38

Gates's trial was whether Gates robbed or attempted to rob the Victim, the essential elements for which were submitted in Instruction No. 8, set forth, *supra*, in our discussion of Gates's second point on appeal.

Though the dissent has attempted to do so on Gates's behalf, Gates did not explain at trial, ***and has not explained on appeal***, how his nervousness in the car, his belief that the Victim was attempting to rob him, or his explanation about why he shot the Victim, evidently, obviously, or clearly make it more or less probable that Gates robbed or was attempting to rob the Victim. The scenarios are not mutually exclusive. One scenario, if believed, does not disprove the other. Gates could have been robbing or attempting to rob the Victim at the same time the Victim was attempting to rob Gates. Thus, even if the jury heard and believed the excluded portions of Gates's testimony, the jury could nonetheless find beyond a reasonable doubt that Gates robbed or was attempting to rob the Victim. "It does not matter whether the [Victim] died as a result of [Gates's] or someone else's use of lawful force, unlawful force, or no force at all. It matters only that the [Victim] died as a result of [Gates's] commission of the underlying felony . . . ." *Oates*, 540 S.W.3d at 861. It was not evident, obvious, or clear to the trial court that the challenged portions of Gates's testimony were essential to afford Gates with a meaningful opportunity to present a defense to the State's assertion that Gates robbed or attempted to rob the Victim.

Gates briefly argues in his Brief that in the absence of an explanation for why he shot the Victim, Gates's bare denial that he was attempting to rob the Victim was less credible. [Appellant's Brief, p. 46] Even if we accept the premise that the jury's willingness to believe Gates's denial of an intent to rob the Victim was diminished by the exclusion of

39

evidence explaining why he shot the Victim, we cannot say that the trial court evidently, obviously, or clearly erred in failing to admit the excluded evidence for this purpose. That is particularly so where Gates's emphasis throughout trial was on the improvident contention that the entirety of his testimony was admissible to inject the issue of self-defense, a refrain Gates has repeated on appeal by claiming in his second point on appeal, discussed *supra*, that the trial court erred in failing to instruct on the issue of self-defense.

Gates relies on *Oates* to claim that even if the excluded portions of his testimony were only offered on the issue of self-defense, they should have been admitted as a matter of law as a part of telling his story. *Oates* does not stand for that proposition. In *Oates*, a defendant accused of felony murder was permitted to testify that he pulled out a gun and shot two victims during a drug transaction when the victims pulled out guns to shoot him. 540 S.W.3d at 860. But in *Oates*, the defendant was charged with other forms of homicide in addition to felony murder, and the jury was instructed "on conventional murder, the lesser offenses of voluntary manslaughter and involuntary manslaughter, and, in the alternative, felony murder." *Id.* The defendant's self-defense testimony in *Oates* was thus admissible because self-defense was available as a defense to several of the homicide charges. In contrast, Gates was not charged with any form of homicide other than felony murder, and self-defense is not available as a defense to felony murder. *Oates* does not address the admissibility of evidence expressly offered on the issue of self-defense where self-defense is not at issue in a case as a matter of law.

The dissent places heavy reliance on *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986), for the proposition that exclusion of "competent, reliable evidence . . . central to

40

[a] defendant's claim of innocence . . . deprives a defendant of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" (Citation omitted). Not unlike most of the analysis in the dissent, *Crane* is neither cited nor relied on by Gates. Regardless, *Crane* is distinguishable. In *Crane*, the State's *in limine* request at trial to exclude any evidence on the voluntariness of a defendant's confession was granted because "voluntariness" had already been determined before trial, and under Kentucky law, could not be relitigated. *Id.* at 686-87. The defendant sought to admit evidence at trial that would have been relevant on the issue of his confession's voluntariness, but that was being offered on a different issue--to determine his confession's credibility. *Id.* at 686. The United States Supreme Court concluded that although the voluntariness of a confession could not be further litigated under Kentucky law, evidence that supported that finding could still be presented to the jury *if relevant to another purpose*. *Id.* at 687. The dissent seizes on this holding to analogously argue that although self-defense was not available as a defense to Gates's crime, evidence that would have supported a self-defense finding could still be presented to the jury if relevant to another issue--here, whether Gates robbed the Victim.

We conceptually agree that evidence not relevant to one issue in a case can nonetheless be relevant to, and thus admissible on, another issue in a case. The dissent's reliance on *Crane* ignores, however, that the defendant in *Crane* expressly sought through his offer of proof to admit the excluded evidence on a proper issue--the credibility of his confession. *Id.* at 686. In sharp contrast, Gates's offer of proof was expressly limited to seeking admission of excluded portions of his testimony for the improper purpose of

41

establishing the defense of self-defense. Stated simply, in contrast to Gates's circumstances, in *Crane*, the trial court's erroneous exclusion of evidence and the related impact on the defendant's constitutional ability to present a complete defense was properly preserved for review.

Even if we could find (which we do not) that the trial court evidently, obviously, and clearly erred in excluding the discrete portions of Gates's testimony we have identified, we would not find that Gates suffered manifest injustice or a miscarriage of justice as a result. "[U[nder Missouri law, plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome determinative . . . ." *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002) (citing *State v. Armentrout*, 8 S.W.3d 99, 110 (Mo. banc 1999)). "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously [excluded] evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously [excluded] evidence." *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000) (internal quotation marks and citation omitted).[13]

---

[13]Even in *Crane*, where the determined claim of constitutional error was preserved, the United States Supreme Court noted that the mere exclusion of evidence properly offered on the issue of a confession's credibility was insufficient, standing alone, to warrant a new trial, and instead required remand to subject the trial court's erroneous evidentiary ruling "to harmless error analysis." 476 U.S. at 691. Under harmless error review, determined error of constitutional proportion must be harmless beyond a reasonable doubt, a determination that "depends upon a host of factors," including, without limitation, the importance of the improperly admitted or excluded testimony, "whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

There is no basis in the record for us to find that the exclusion of evidence that Gates felt nervous in the car, or that the Victim demanded Gates's money, or explaining why Gates shot the Victim, was outcome determinative because the jury would have acquitted Gates had they heard the excluded testimony. The jury heard Gates's testimony that he had no intention of robbing the Victim; that the Victim was flashing a gun in the car; that Gates was uncomfortable with the way the Victim and Ramirez were acting in the car and told them as much; that the Victim had a gun in Gates's face from the back seat of the car at the moment Gates pulled into the parking lot; and that he shot the Victim with Ramirez's gun. Ironically, in connection with his second point on appeal, Gates's argues that this evidence was substantial evidence of self-defense, a concession that the jury heard substantial evidence explaining Gates's version of the events on the day of the Victim's death.

Even without this concession, the excluded testimony that Gates was nervous would have added very little to Gates's testimony that he was uncomfortable with the way the Victim and Ramirez were acting in the car and that he communicated as much to the Victim and Ramirez. Gates's excluded testimony that the Victim was trying to rob him would have added very little to Gates's testimony that he turned around in the car to see the Victim with a gun pointing in Gates's face. Gates's excluded testimony that he and the Victim struggled over the Victim's gun would have added nothing to Ramirez's testimony that the Victim and Gates were struggling over the Victim's gun in the car immediately before the Victim was shot, or to Gates's testimony and other evidence in the case establishing that the Victim was not shot with his own gun, but was instead shot by Gates with Ramirez's gun. And more to the point, as we explain, *supra*, even if the excluded testimony had been admitted

43

and believed, the jury could still have convicted Gates if it believed that Gates had the intent to rob the Victim--an intent that is not mutually exclusive of the Victim's alleged attempt to rob Gates. The excluded portions of Gates's testimony were not outcome determinative.

Our role on appeal is to review for prejudicial trial court error. The trial court was plainly faced with a defense strategy to seek the admission of evidence on the issue of self-defense as an absolute justification for Gates's criminal conduct though, as a matter of law, self-defense is not a legal justification for that conduct. The dissent disregards entirely the position the trial court was placed in as a result--a position not coincidentally repeated on appeal, given Gates's second point on appeal claiming error in the failure to instruct on self-defense. Despite the potential admissibility for the purpose of permitting Gates to "tell his story" of the discrete portions of Gates's testimony that were excluded at trial, we will not indict the trial court for excluding that evidence when the evidence was being offered (if not exclusively so) to seek absolution as a matter of law on the basis of self-defense. Nor will we indict the trial court for excluding discrete aspects of Gates's testimony at trial that, even if admitted and believed by the jury, would not have assured or required Gates's acquittal.

Point One is denied.

### Point Three: Failure to Strike Venireperson

In his third point on appeal, Gates asserts that the trial court plainly erred in failing to strike Venireperson No. 38 for cause *sua sponte*. Gates acknowledges that his counsel never moved to strike Venireperson No. 38 for cause, but argues that the trial court

44

nonetheless had a *sua sponte* obligation to do so because Venireperson No. 38 stated during voir dire that he would automatically presume Gates to be guilty because he admitted shooting the Victim.

"When the defendant is aware of facts which would sustain a challenge for cause, he must present his challenge during the voir dire examination or prior to the swearing of the jury[;] otherwise the point is waived." *State v. Marr*, 499 S.W.3d 367, 376 (Mo. App. W.D. 2016) (quoting *State v. Goble*, 946 S.W.2d 16, 18 (Mo. App. S.D. 1997)). If, as here, the defendant fails to make a timely and proper objection to a venireperson, the defendant waives his right to challenge the venireperson. *Id.* "The policy for requiring a contemporaneous objection is to minimize the incentive for sandbagging in hopes of an acquittal and then, after an unfavorable verdict, challenge the selection of the jury which convicted." *Id.* (quoting *State v. Sumowski*, 794 S.W.2d 643, 647 (Mo. banc 1990)). Further, "[a] trial court is under no duty to strike a juror on its own motion," *id.* (quoting *Baumruk*, 280 S.W.3d at 616), so that "[s]*ua sponte* action should be exercised only in exceptional circumstances." *Id.* (quoting *State v. Drewel*, 835 S.W.2d 494, 498 (Mo. App. E.D. 1992)). This case does not present an exceptional circumstance that required the trial court to *sua sponte* strike a venireperson.

Venireperson No. 38 provided several answers to questions posed during voir dire including: (i) he was on 39th Street, the street on which the mall is located, when police responded to the scene on January 2, 2018, but he would be able to set aside that experience when listening to the evidence; (ii) for three years, he had been a member of a neighborhood watch group that collaborates with the Independence Police Department, but

45

he would be able to set aside that experience and his relationship with the police department when listening to the evidence; (iii) he has a family member or close friend who has been incarcerated, but there was nothing about that experience that he would hold against either the State or the defense; and (iv) he believed that if Gates were truly innocent, the case would not have gone this far, but that he could nonetheless presume Gates innocent until proven guilty and would vote that Gates was not guilty if pressed to vote at that very moment.

At some point during voir dire, the trial court and the parties reached the conclusion that the jury did not understand the concept of felony murder. The trial court and the State agreed to allow Gates's counsel to explain that the State had the burden to prove that the murder of the Victim occurred during the commission of a robbery, and that there were other elements in dispute beyond who shot the Victim that the jury would have to consider in making that determination. Gates's counsel then specifically asked the venire whether anyone would automatically presume Gates guilty because the defense conceded that Gates shot the Victim. Several venirepersons, including Venireperson No. 38, raised their hands. Gates's counsel asked follow up questions of members of the venire who raised their hands, but did not do so with Venireperson No. 38. When defense counsel asked if anyone had been missed with the follow up questions, Venireperson No. 38 did not raise his hand.

Neither the State nor Gates used a peremptory strike on Venireperson No. 38. Neither the State nor Gates sought to strike Venireperson No. 38 for cause. After the for-cause and peremptory strikes were completed, the trial court made a record identifying

46

which members of the venire would serve on the jury. The list included Venireperson No. 38.

Gates's counsel said, "Thirty-eight that we struck?" Both the trial court and the State responded that they did not agree that Venireperson No. 38 had been struck. Gates's counsel said, "I don't have 48 as struck. I said 38." Then the following conversation took place:

Trial court: What are we going to do with Juror 48 supposed to be available, didn't get picked, didn't get struck. [sic] Shall we skip it or seat 15?

Law clerk: Forty-eight is the one that has migraines and need[s] access to medicine.

Trial court: I can strike her.

State: Let's just get rid of her for hardship.

Trial court: Let's do it again. Make sure you're with me.

Gates's counsel: Actually 38 I had struck because--never mind. Judge, 38 was struck because he said my client was already guilty. He presumed him guilty.

State: Then I think he rehabilitated himself. I'm almost positive he did.

Trial court: I don't think I said anything about 38.

State: You cleared up that question. I think he rehabilitated himself because [counsel] asked him numerous times: So as he sits here today you agree he's presumed innocent and he kept saying, yes.

Gates's counsel: I have he said, presumed guilty. The follow-up I would have done was, so you can't--

Trial court: Did anybody make a motion to strike 38?

State: No.

Trial court: Let's leave it sit where it is then?

47

Defense counsel: So we're keeping 38?

Trial court: Nobody struck him. We can go through it without revisiting it over and over again. I think we can bring the jury in and we'll seat them.

The trial court seated Venireperson No. 38 on the jury as "Juror 14" of the twelve jurors and two alternates.

A party may challenge a venireperson for cause after conviction, but the challenge will only be considered for plain error resulting in a miscarriage of justice or manifest injustice. *Marr*, 499 S.W.3d at 376. There is no basis to conclude that the trial court's failure to strike Venireperson No. 38 for cause *sua sponte* resulted in a miscarriage of justice or manifest injustice. "The fitness of a juror is considered in the context of the entire examination of the juror and not by focusing on one response." *Shockley v. State*, 579 S.W.3d 881, 893 (Mo. banc 2019). While Gates's counsel failed to pose follow-up questions to Venireperson No. 38 to clarify why he raised his hand in response to the question that he would automatically presume Gates guilty because Gates admitted shooting the Victim, when asked on four other occasions during voir dire, Venireperson No. 38 confirmed that he would be able to set aside his experiences and follow the trial court's instructions if chosen to serve on the jury. Given Venireperson No. 38's other answers during voir dire, we cannot conclude that the trial court committed error, plain or otherwise, in failing to strike Venireperson No. 38 for cause *sua sponte*.

Point Three is denied.

48

**Conclusion**

The Judgment is affirmed.

_____
Cynthia L. Martin, Judge

Ahuja, Judge, dissents in separate opinion
Ardini, Judge, joins in the majority opinion



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

STATE OF MISSOURI,          )
              Respondent,  )
                      )
v.                    )    WD83104
                      )
TYLER J. GATES,       )    FILED: October 27, 2020
              Appellant.  )

### DISSENTING OPINION

In this prosecution for murder, the circuit court prohibited defendant Tyler Gates from telling the jury how the victim died. Because the court's remarkable and sweeping evidentiary rulings denied Gates his constitutional right to present a meaningful defense, I respectfully dissent from the majority's affirmance of his convictions. I would reverse, and remand the case to the circuit court for a new trial.

Gates was convicted of felony murder on the theory that he shot and killed Matthew Haylock in the course of committing an armed robbery. The State's principal witness against Gates was Luis Ramirez. According to Ramirez, Gates asked to see Haylock's handgun as the three young men were traveling to the Independence Center shopping mall in a car Gates was driving. Once at the shopping area, Ramirez claimed that Gates refused to return Haylock's gun; Haylock reached for his gun; Haylock and Gates struggled; and Gates shot Haylock and left the scene.

Gates' version of events was radically different. He claimed that, once he, Ramirez and Haylock arrived at Independence Center, _Haylock_ attempted to rob

*him*, by pointing Haylock's Glock 17 handgun in Gates' face, and demanding the cash which Gates had brought to the shopping mall to purchase a pair of shoes. According to Gates, although he brushed Haylock's gun away more than once, Haylock kept pointing it at Gates' head. Gates was prepared to testify that he ultimately felt that he had no alternative but to defend himself by shooting Haylock.

While Ramirez was permitted to tell the jury *his* version of events (which was consistent with Gates' *guilt*), the circuit court repeatedly ruled that Gates would not be permitted to tell the jury *his* version of the events leading to Haylock's death (which would establish his *innocence*). The circuit court entered its broad exclusionary rulings because the court believed Gates' testimony would only be relevant to establish the legal justification of self defense, and self defense is not available as a defense to felony murder.

The circuit court's evidentiary rulings, which prevented Gates from testifying to the central events underlying his prosecution, were wrong. As counsel repeatedly explained to the court, to win a conviction the State was required to prove that Gates had stolen Haylock's gun, and had shot Haylock to effectuate the theft. Gates was entitled to testify to his version of the events leading to Haylock's death, because his testimony would negate essential elements the State was required to prove. It is irrelevant that Gates' testimony might also be relevant to the defense of self-defense (a justification which counsel acknowledged was unavailable here).

**Discussion**

The Supreme Court of the United States has emphasized:

the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence . . . when such evidence is central to the defendant's claim of innocence. In

2

the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing."

*Crane v. Ky.*, 476 U.S. 683, 690-91 (1986) (citations omitted); *accord, Holmes v. S.C.*, 547 U.S. 319, 324-26 (2006). As the majority recognizes, a criminal defendant's right to present a complete defense includes the defendant's "right to testify himself." *Rock v. Ark.*, 483 U.S. 44, 52 (1987). *Rock* held that "an accused's right to present his own version of events in his own words" is fundamental to the fairness of a criminal proceeding, since "the most important witness for the defense in many criminal cases is the defendant himself." *Id.*; *see also, e.g., Fieldman v. Brannon*, 969 F.3d 792, 800-01 (7th Cir. 2020).[1]

According to the verdict director, in order to convict Gates of felony murder, the jury had to find, "[f]irst, that [Gates] committed robbery in the first degree as submitted in Instruction No. 8." LF 23/12. In order to find that Gates had committed first-degree robbery, the jury was told that it had to find that he "took a gun, which was property in the possession of Matthew Haylock" "for the purpose of withholding it from the owner permanently," and that Gates "used physical force on or against Matthew Haylock for the purpose of preventing resistance to the taking of the property." LF 23/14.[2]

---

[1] The majority suggests (Maj. Op. at 25-27) that a defendant's right to present a complete defense is infringed only by evidentiary rules which categorically prohibit admission of particular types of evidence. But as *Crane* makes clear, a defendant's constitutional right to present a defense can be violated by a trial judge's evidentiary rulings in an individual case, as much as by generally applicable rules. In *Crane*, the Court found a constitutional violation where the defendant was prevented by the trial court's evidentiary rulings from presenting evidence tending to undercut the credibility of his confession. 476 U.S. at 685-86; *see also, e.g., Fieldman*, 969 F.3d at 800-01; *State v. Brown*, 103 S.W.3d 923, 929 (Mo. App. W.D. 2003); *State v. Ray*, 945 S.W.2d 462, 469-70 (Mo. App. W.D. 1997).

[2] The majority suggests that the distinction between an *attempted* robbery, and Gates' purported commission of a *completed* robbery, "is not material to the issues on appeal." Maj. Op. at 4 n.3. I disagree. The elements of first-degree robbery which the State was required to prove – and which Gates disputed – are critical to understanding the significance of the circuit court's evidentiary rulings.

Whether Gates had committed first-degree robbery was the _only_ disputed issue at trial. The State acknowledged in closing that, because Gates admitted to shooting Haylock, "what we're really looking at here, and we talk about it a lot, is that he committed a robbery and that Matthew Haylock died during the perpetration of that robbery." Tr. 539:3-6. The majority similarly recognizes that "[t]he jury's determination about whether Gates[ ] committed . . . robbery in the first degree thus controls the ultimate issue in the case – whether Gates could be found guilty of felony murder." Maj. Op. at 23.[3]

To persuade the jury that Gates had committed first-degree robbery, the State argued in closing that the "taking" element was established by Ramirez's testimony, and by the presence of Haylock's gun in Gates' car following the shooting; it argued that "Matthew's gun was found in the front seat because Tyler had taken it." Tr. 544:23-24. The State argued that the "force" element was established because the evidence purportedly showed that, "when [Gates] took Matthew's Glock 17 he then reached into the door and grabbed [Ramirez's gun] and decided to take care of it _because he was going to keep that gun._" Tr. 546:10-13 (emphasis added).

Gates' testimony would have countered the State's position concerning these essential elements. Gates asserted that he did not intend to take Haylock's gun, but instead that Haylock pointed the gun at him to effectuate a robbery _of Gates_, and that the two scuffled as Haylock repeatedly pointed the gun at Gates. And Gates was prepared to testify that he did not shoot Haylock for the purpose of robbing him, but instead that he shot Haylock to defend himself from Haylock's own attack.

---

[3] I omit the majority's reference to whether Gates "was attempting to commit robbery" because that is not what the jury was asked to decide. _See_ note 2, above.

4

In a series of rulings which began before trial, then continued during voir dire, opening statements, and the presentation of evidence, the circuit court prevented Gates from giving testimony which would have contested two of the central elements the State was required to prove: whether he had taken Haylock's gun to deprive Haylock of it; and whether he had shot Haylock to accomplish the theft. As a result, the jury only heard *the State's version* of the critical events – but not Gates'.

The scope of the trial court's exclusionary rulings is startling. Prior to opening statements, the court stated that Gates would not be permitted to testify to "anything that touches on self-defense. Like I'm in fear. I had to do something to protect myself, that kind of stuff"; "[a]nything commonsensically that has something to do with self-defense he can't do. It's barred." Tr. 198:10-18. Later, during the defense's opening statement, the court stated that defense counsel had "overstepped" the court's ruling by asserting that, when the three men got to Independence Center, "Tyler Gates turns around and he's looking at a gun." Tr. 216:18-21, 217:16. The court stressed:

> The fact that somebody has a gun aimed on him would put him in fear, you're heading towards self-defense. There's no reason for that.
>
> . . . .
>
> You may not talk about anything about self-defense or something about fear, or something about guns pointing at people. You can't talk nothing about that.

Tr. 218:9-12, 219:2-6; *see also* Tr. 492:15-18 ("If the defendant testifies he may not mention self-defense or anything touching upon self-defense or his fear regarding his need to protect himself or something."). When defense counsel asked for clarification, the court made clear that Gates would not be permitted to testify to <u>any</u> of the events which he contended preceded Haylock's shooting:

5

[Defense counsel]: Just so I'm clear, Judge. So the fact that we can't go into the facts, not that Mr. Gates will testify that Mr. Haylock pulled out a gun first, and Mr. Gates then grabbed the gun and then Mr. Gates shot.

THE COURT: None of that will come in.

[Defense counsel]: None of that. We cannot talk about any of that.

THE COURT: The only purpose of any of that is to demonstrate self-defense. You're evading my ruling.

Tr. 219:12-22.

The broad sweep of the circuit court's exclusionary orders became clearer as trial progressed. Thus, the court prohibited defense counsel from asking Ramirez on cross-examination whether, after he had exited the car, "a scuffle occurs; is that right?" Tr. 323:1-2; *id.* at 324:6 (sustaining objection). During Gates' own testimony, the court ruled that defense counsel could not ask him whether he thought Haylock was going to rob him. Tr. 503:25-504:6. The court then held that "[y]ou don't get to ask him why" he shot Haylock, Tr. 505:10-11 – *even though Gates'* _purpose_ *for shooting Haylock is an essential element of the first-degree robbery offense underlying this felony murder prosecution.* The court continued:

> You may not ask any of these questions touching on: I did this for a good reason, or I did this because I was scared, or I did this because of self-defense. I was in fear of getting robbed. You can't do any of that. It's all forbidden.

Tr. 506:4-10.

As a result of the circuit court's broad exclusionary rulings, during opening statement, and again during Gates' testimony, defense counsel moved directly from the *arrival* of Gates' vehicle at Independence Center, to his *departure* from the shopping mall after Haylock was shot.[4] Thus, Gates was prevented from testifying

---

[4] The circuit court stated repeatedly that any statement that Haylock had pointed a gun at Gates was inadmissible, and violated the court's evidentiary rulings. While the court may not have stricken Gates' testimony that "I happened to look back and see a gun in my face," Tr. 503:7-8, it clearly sustained the State's objection to that

6

to *any* of the events which occurred after his vehicle reached Independence Center, until he drove away.  But in its closing argument, the State argued that the *only* events that mattered were the events which occurred *during the time period Gates could not address*:

> What matters, what matters isn't what [Gates and Ramirez] planned a day before or two days before.  It doesn't matter what Tyler and Luis discussed at Denny's [restaurant, where they stopped on their way to pick up Haylock].  It doesn't matter whether or not they decided to call it off and not do it.  ***What matters is Tyler Gates' actions after they pulled into that parking lot of the Independence Center***.  When he had Matthew Haylock's gun in the front seat with him, and Luis gets out of the car and Matthew asked for his gun back, and Tyler says, no, this is my gun now.

Tr. 572:10-21 (emphasis added).  Due to the circuit court's evidentiary rulings, Gates was prohibited from testifying concerning "what matters" – the central events underlying his prosecution.[5]

The circuit court limited the testimony Gates could offer because the Missouri Supreme Court had held in *State v. Oates*, 540 S.W.3d 858 (Mo. 2018), that the defense of self-defense is not available in a felony murder prosecution.  What the circuit court's rulings failed to appreciate, however, is that evidence may be relevant for multiple purposes.  *Even if* self-defense is unavailable as a defense in a felony murder prosecution, that does *not* mean that evidence that the defendant was defending himself from a violent attack by the victim may not be relevant for another purpose – here, to show that Gates did not commit an armed robbery.

---

testimony, and to defense counsel's opening statement referring to the same fact. Consistent with the circuit court's repeated rulings, in closing argument Gates' counsel did *not* refer to Gates' claim that Haylock pointed a gun at him.

[5] The majority opinion states that, "[p]lainly, Gates was permitted to provide a great deal of testimony to tell his story about what occurred at the time the Victim was shot." Maj. Op. at 34 n.11.  It is unclear what the majority means.  Other than Gates' statement that "I happen to look back and see a gun in my face" – to which an objection was *sustained* – Gates was prohibited from offering *any* testimony concerning "what occurred at the time the Victim was shot" (other than in an offer of proof which the jury did not hear).

The circuit court's analytical error is similar to the one made in *Crane v. Kentucky*, 476 U.S. 683 (1986). In *Crane*, a defendant moved prior to trial to suppress his confession, on the ground that it was involuntary. *Id.* at 684-85. The trial court denied the motion to suppress. *Id.* at 685. At trial, the defendant contended that the jury should not believe his confession because of the coercive circumstances in which it was given. The trial court granted the prosecution's motion *in limine* to exclude evidence of purported coercion. The court reasoned that it had already determined that the confession was voluntary and admissible, and that the defendant could not collaterally attack that ruling before the jury. "Although the precise contours of the ruling are somewhat ambiguous, the court expressly held that the defense . . . would not be permitted to 'develop in front of the jury' any evidence about the duration of the interrogation or the individuals who were in attendance." *Id.* at 686.

The Supreme Court of the United States reversed. It held that, despite the trial court's determination that the defendant's confession was voluntary as a legal matter, the defendant was entitled to present evidence to challenge the credibility of his confession at trial.

> [T]he circumstances surrounding the taking of a confession can be highly relevant to two separate inquiries, one legal and one factual. The manner in which a statement was extracted is, of course, relevant to the purely legal question of its voluntariness, a question most, but not all, States assign to the trial judge alone to resolve. But the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence. Confessions, even those that have been found to be voluntary, are not conclusive of guilt. And, as with any other part of the prosecutor's case, a confession may be shown to be "insufficiently corroborated or otherwise . . . unworthy of belief." Indeed, stripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt? Accordingly, regardless of whether the defendant marshaled the same

8

evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.

*Id.* at 688-89 (citations omitted). The Court concluded that "the blanket exclusion of the proffered testimony about the circumstances of [defendant's] confession deprived him of a fair trial," by denying him his constitutional right to present a "complete defense" to the charges. *Id.* at 690.

The same analysis applies here. It may be that self-defense was unavailable to Gates as a defense to the felony murder charge. But this does not mean that Gates was prohibited from presenting evidence that he had not committed the underlying felony, and could therefore not be guilty of felony murder, because he was simply protecting himself against a violent felony attempted by Haylock. The circuit court read *Oates* far too broadly, as if that case prohibited the introduction of all evidence which could conceivably support a self-defense defense, even where that evidence was also independently relevant for other purposes. *Oates* held no such thing.

The majority contends that Gates failed to preserve the argument that his testimony "would be independently relevant to negate an essential element in the State's case," even if not admissible to establish the legal justification of self defense. Maj. Op. at 34. I disagree. From the initial argument on the State's motion *in limine*, Gates argued that his version of events was relevant to address whether or not a robbery had occurred:

> Judge, whether or not Mr. Gates attempted to rob someone, did rob someone or recklessly shoot someone while attempting to rob someone is a fact issue for the jury. If the Court does not allow Mr. Gates to use self-defense, Judge, he is being precluded from giving a defense which is a violation of his due process rights, Judge.

9

In this case we believe that the facts that are going to come out that the co-defendant is going to testify that Mr. Gates was attempting to rob the victim in this case, Matthew Haylock.

Mr. Gates did give a statement to the police and he denies that any robbery was occurring; that he was acting in self-defense when he shot Mr. Haylock.

So, Judge, we would argue whether or not a robbery was occurring or attempted robbery is occurring is a fact issue for the jury. And for the Court to preclude Mr. Gates from using self-defense the Court would have to find that Mr. Gates did rob someone or attempt to rob someone beyond a reasonable doubt, Judge. We believe that we should be able to argue self-defense and ask about that in voir dire, in cross, in closing and in opening because, again, Judge it is a fact issue for the jury to decide.

Tr. 16:22-17:25. Throughout trial, counsel made clear that they sought to admit Gates' version of events to respond to the State's contention that he had committed an armed robbery. Thus, before opening statements, Gates' counsel argued:

Judge, I believe, one, Mr. Gates has a right to testify. Two, he has a right to testify about what happened to him, about his version of events. In this case the co-defendant Luis Ramirez will be testifying to what he observed and what he believed happened in that car. Mr. Gates also has the right as the defendant to testify on his behalf and to testify about what happened in that car regarding the events.

Tr. 197:12-22. Similarly, during Gates' direct testimony, his counsel explained that his testimony that Haylock pointed a gun at Gates while attempting to rob him was relevant to defeat an essential element of the State's case:

I think this goes directly to one of the elements that the State was trying to prove. They are trying to prove that Mr. Tyler Gates was attempting to rob someone. He said while he was on the stand he was not attempting to rob anyone.

Tr. 504:9-14; *see also, e.g.*, Tr. 145:8-16 (during voir dire, defense counsel argues that Gates should be permitted to present evidence to "rebut[ ] state offenses [*sic*] a felony was occurring"; "we are arguing no robbery was being committed in this case").

10

Defense counsel conceded – more than once – that Gates would *not* be

entitled to an *instruction* on self-defense in connection with felony murder, in light

of the *Oates* decision.  Counsel nevertheless argued that the testimony Gates

intended to offer was relevant to the issue of whether a robbery had occurred.  Thus,

during the pre-trial argument on the State's motion *in limine,* defense counsel

explained:

> We will not submit self-defense for the instruction of felony murder.
> But, again, Judge, we would argue the issue whether or not a robbery
> was occurring is a fact issue for the jury and we should be able to argue
> self-defense throughout the trial.

Tr. 18:14-20.  And again, prior to opening statements, defense counsel conceded

that, under *Oates,* Gates was not entitled to an instruction on self-defense:

> The case of State of Missouri vs. Oates, all that case says is that
> self-defense instruction cannot be given with a felony murder
> instruction.  That case does not state that the defense is not allowed to
> assert self-defense in this matter.

Tr. 195:2-7.  True to their word, defense counsel did not offer a self-defense

instruction in connection with the felony murder offense at trial.[6]

I recognize that, in arguing that Gates should be permitted to testify to his

version of events, defense counsel repeatedly used the phrase "self defense" to

describe the nature of the evidence he wished to present.  Counsel's use of the

phrase "self defense" does not affect the preservation analysis.  As explained above,

defense counsel explicitly conceded – twice – that Gates was not entitled to an

*instruction* on self defense in light of the Missouri Supreme Court's decision in

---

[6]       Gates' purported entitlement to a self-defense instruction on the felony murder charge was apparently first raised *in this appeal.*  Given trial counsel's explicit concessions that Gates was not entitled to such an instruction, I would summarily reject the instructional-error point, and hold that Gates waived his right to *any* review of a purported instructional error, even for plain error.  *See, e.g., State v. Nickels,* 598 S.W.3d 626, 637-38 (Mo. App. E.D. 2020).  Even if the instructional error claim were entitled to substantive review, it is virtually frivolous in light of *Oates* and § 563.031.1(3), RSMo, which bars the use of self-defense as a defense if "[t]he actor was attempting to commit, committing, or escaping after the commission of a forcible felony."

11

*Oates.* Because Gates' counsel admitted that the legal justification of "self-defense" was unavailable, and that the jury would not be instructed on that defense, counsel's references to "self defense" can only refer to the submission of evidence that Haylock had attempted to perpetrate a violent felony against Gates, and that Gates had defended himself from Haylock's attack by shooting Haylock. Given Gates' concession that self-defense *as a legal defense* was unavailable, what _else_ could counsel have meant by the phrase "self-defense"? Moreover, as discussed above, Gates' counsel made clear on multiple occasions that they sought to introduce Gates' version of events to rebut the State's claim that a robbery had occurred – _not_ to establish a legal justification for Gates' actions. The circuit court could not have been confused either as to the *nature* of the evidence Gates sought to introduce, or about the *reason* why Gates believed that evidence was admissible.

Gates also properly preserved the evidentiary point in his motion for a new trial. No fewer than *seven separate paragraphs* of his new-trial motion challenge the circuit court's exclusion of Gates' testimony concerning what happened in his car at Independence Center. Omitting the constitutional citations, Gates' new trial motion argued that:

> 1. The trial court erred to the prejudice of the Defendant when it sustained the State's motion in limine barring the Defendant from injecting the issue of self-defense in voir dire, opening, closing, direct and cross in violation of defendant's rights to an impartial jury, effective assistance of counsel, a fair trial, and due process . . . .
>
> 2. The trial court erred to the prejudice of the Defendant when it sustained the State's objection barring the Defendant from injecting the issue of self -defense in opening in violation of defendant's rights to an impartial jury, effective assistance of counsel, a fair trial, and due process . . . .
>
> . . . .
>
> 17. The trial court erred to the prejudice of the Defendant when it again sustained the State's motion in limine at the beginning of Defendant's evidence barring the Defendant from injecting the issue

12

of self -defense in it's [*sic*] case in chief in violation of defendant's rights to testify, effective assistance of counsel, a fair trial, and due process . . . .

18. The trial court erred to the prejudice of the Defendant when after hearing Defendant's offer of proof regarding Defendant's self-defense testimony, the Court again sustained the State's motion in limine barring the Defendant from testifying that he was defending himself in violation of defendant's right to testify, effective assistance of counsel, a fair trial, and due process . . . .

19. The trial court erred to the prejudice of the Defendant when it sustained the State's objection to the Defendant testifying that he was nervous and asked that the testimony be stricken from the record in violation of defendant's right to testify, effective assistance of counsel, a fair trial, and due process . . . .

20. The trial court erred to the prejudice of the Defendant when it sustained the State's objection to the Defendant testifying that when he turned around a gun was in his face in violation of defendant's right to testify, effective assistance of counsel, a fair trial, and due process . . . . not allowing defendant to testify regarding his version of events . . .

21. The trial court erred to the prejudice of the Defendant when it sustained the State's motion in limine regarding self-defense barring the defendant from presenting a complete defense in violation of defendant 's right to testify, effective assistance of counsel, a fair trial, and due process . . . .

LF 34.

The majority asserts that, at the time of his offer of proof, Gates may have offered a somewhat different or more limited rationale for admission of his testimony. Maj. Op. at 28-30. But in his argument prior to the offer of proof, Gates' counsel expressly asked the circuit court to reconsider the *limine* ruling it had made before trial (to which the court had adhered during voir dire, in opening statements, and during the State's case in chief). Moreover, <u>*following*</u> the offer of proof, during Gates' testimony, his counsel once again informed the court that Gates' testimony about Haylock's attempted robbery "goes directly to one of the elements that the State was trying to prove[,] . . . that Mr. Tyler Gates was attempting to rob someone . . . ." Tr. 504:9-13.

13

Gates' objections at the time of his offer of proof and testimony must be construed in light of the arguments he had made previously, which he was merely renewing at the points on which the majority focuses. *See, e.g., State v. Davis*, 533 S.W.3d 781, 786 (Mo. App. S.D. 2017) ("'[c]ross-referencing a motion *in limine* in an objection has been found to preserve a claim of evidentiary error to the extent the objection was contained within the motion'" (quoting *State v. Evans*, 517 S.W.3d 528, 543 (Mo. App. S.D. 2015)); *State v. Minner*, 311 S.W.3d 313, 318 (Mo. App. W.D. 2010) (objection to witness' testimony was adequately preserved where, at trial, defense counsel "objected . . . 'based on a previous motion'"); *State v. Williams*, 724 S.W.2d 652, 656 (Mo. App. E.D. 1986) (excusing defendant's failure to make an offer of proof where "the record is replete with references to the sustained motion *in limine* and with defense counsel's objections thereto," and "[a]rgument on the motion was more extensive than usually occurs where evidence is excluded by sustaining trial objections").

In this case, the admissibility of Gates' version of events was argued by the parties on no fewer than <u>*eight*</u> separate occasions (during a hearing on the State's motion *in limine*; during voir dire; prior to opening statements; during the defense's opening statement; during Ramirez' testimony; prior to Detective Aaron Gietzen's testimony; and prior to and during Gates' own testimony). The circuit court was obviously frustrated by the number of times this issue recurred: even during the defense's opening – *before any evidence had even been presented* – the court complained that it had "ruled 33 times" on the issue, and that it was "the 13th time" defense counsel had requested clarification. Tr. 217:21, Tr. 218:23-24. Given this extensive discussion, it requires a hyper-technical, artificially compartmentalized view of the record to hold that Gates failed to preserve his primary defensive argument.

14

The majority also suggests that Gates' brief is deficient, because his Point Relied On refers to the court's exclusion of his version of "what occurred at the time the shot was fired." Maj. Op. at 34 n.11. It is unclear to me what level of evidentiary detail the majority believes Gates was required to include in his Point Relied On. Gates' Brief contains a two-page description (replete with record citations) of the offer of proof in which he offered his version of what occurred. Gates' Brief also describes in detail the testimony he was able to give, and the limitations the circuit court placed on that testimony. It is absolutely clear beyond all doubt what testimony Gates contends the circuit court erroneously excluded; the fact that this testimony is referred to somewhat generally in Gates' Point Relied On should not be fatal.

The circuit court's unjustified restrictions on Gates' testimony justify a new trial. Despite the majority's claims to the contrary, Gates was not permitted to testify to the central question presented by this case: what occurred in Gates' car after it arrived at Independence Center, up to the moment of Haylock's shooting? Although the majority suggests that Haylock's intent to rob Gates was not necessarily inconsistent with Gates having a similar intention (Maj. Op. at 39), the fact remains: if Gates shot Haylock *to defend himself*, Gates plainly did not shoot him *to effectuate a robbery*. The majority also suggests that evidence from Gates, explaining why he shot Haylock, "would have added very little" or "nothing" to the evidence otherwise admitted. Maj. Op. at 43. I cannot understand how that could be so. Gates' testimony that he only shot Haylock after repeatedly trying to brush Haylock's gun away, and after refusing Haylock's demands to turn over his money, would have given the jury a completely different version of events than they heard from Ramirez. Gates' testimony would have given the jury a first-person explanation of how Haylock died, which absolved Gates of criminal responsibility.

15

Courts in numerous cases have held that the erroneous exclusion of far less consequential evidence required a new trial. Thus, the Supreme Court of the United States held in *Crane v. Kentucky*, that a new trial was required where a defendant was prohibited from presenting evidence undercutting the credibility of his confession. 476 U.S. at 685-86. In two cases, this Court has held that a defendant was entitled to a new trial when the excluded evidence merely involved *circumstances which <u>bolstered</u>* the defendant's version of events; unlike here, the excluded evidence in our prior cases did not actually prove the defendant's innocence.[7] Similarly, federal appellate courts have reversed convictions, based on the denial of a defendant's constitutional right to present a complete defense, where a trial court excluded evidence which simply supported – but did not directly establish – the defendant's innocence.[8] Given that the excluded court evidence in this

---

[7] *See State v. Brown*, 103 S.W.3d 923, 929 (Mo. App. W.D. 2003) (reversing forgery conviction of defendant, a taxi driver who had attempted to cash a forged check, where circuit court excluded defense evidence that multiple other merchants had accepted similar checks, which "tended to negate the essential element of the State's case that [the defendant] had knowledge the checks were issued without [the victim's] authority"); *State v. Ray*, 945 S.W.2d 462, 469-70 (Mo. App. W.D. 1997) (reversing conviction for second-degree murder where defendant was not permitted to testify to prior harassment and threats made against defendant's family by residents of reputed "drug house," since such evidence "would explain [defendant's] possession of a gun [when he visited the house at the time of the fatal shooting], which in turn would help support his claim that the shooting was accidental").

[8] *See*, *e.g.*, *Fieldman v. Brannon*, 969 F.3d 792, 800-01 (7th Cir. 2020) (affirming grant of habeas relief where, in state criminal prosecution, defendant was prevented from presenting testimony that he was badgered and intimidated by governmental informant into taking allegedly criminal actions); *Scrimo v. Lee*, 935 F.3d 103 (2d Cir 2019) (reversing district court's denial of habeas relief where, in murder prosecution, state trial court excluded evidence that third party who was present at the time of victim's murder was a drug dealer, that the victim was one of his customers, and that third party and victim had used drugs together on the night of her murder, which would have supplied a possible motive for third party to have murdered victim); *United States v. Espinoza*, 880 F.3d 506 (9th Cir. 2018) (reversing defendant's conviction for importation of methamphetamine where district court excluded evidence that defendant's next-door neighbor in Mexico had prior drug-related convictions and had been deported from the United States, which supported defense theory that the defendant was a "blind mule" being used by others to unknowingly smuggle drugs into the country); *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015) (reversing defendant's conviction for wire fraud for submitting fraudulent loan applications, where the district court prevented the

case would directly prove Gates' innocence if the jury believed it, I fail to see how we can avoid reversal.

## Conclusion

I would reverse Gates' convictions, and remand the case to the circuit court for a new trial.

 

 

<u>                                             </u>

Alok Ahuja, Judge

---

defendant from presenting evidence that her leg was broken and that her abusive boyfriend required her to sign loan application papers before she could be taken to the hospital; "[h]ad this evidence been before the jury, a reasonable juror might have doubted whether Haischer had the requisite knowledge and intent to commit fraud").